# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00160-CV

**William H. Kuntz, Jr., in his official capacity as Executive Director of the
Texas Department of Licensing and Regulation; Texas Department of Licensing
and Regulation; Texas Commission on Licensing and Regulation; Frank S. Denton,
in his official capacity as Chairman and member of the Texas Commission on Licensing
and Regulation; Mike Arismendez, in his official capacity as Vice Chairman and member
of the Texas Commission on Licensing and Regulation; Lewis Benevides, in his official
capacity as member of the Texas Commission on Licensing and Regulation; Luann Roberts
Morgan, in her official capacity as member of the Texas Commission on Licensing
and Regulation; Fred N. Moses, in his official capacity as member of the Texas Commission
on Licensing and Regulation; Deborah A. Yurco, in her official capacity as member of
the Texas Commission on Licensing and Regulation; and Lilian Norman-Keeney,
in her official capacity as member of the Texas Commission on Licensing and Regulation;
Appellants**

**v.**

**Reema Khan, d/b/a Salon Rupa - Shapes Brow Bar, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-09-001983, HONORABLE ORLINDA NARANJO, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from district court orders partially denying a plea to the jurisdiction

asserted by governmental defendants and granting a temporary injunction to restrain the defendants'

actions. The defendants and appellants are the Texas Department of Licensing and Regulation

(the Department); the Department's executive director, in his official capacity; the Department's

governing board, the Texas Commission on Licensing and Regulation (the Commission);[1] and all seven of the Commission's members, all in their official capacities. The appellee and plaintiff, Reema Khan, is in the business of eyebrow threading. After the Department imposed administrative penalties against her for practicing cosmetology without a license, Khan brought claims for judicial review under the Administrative Procedures Act (APA) and declaratory-judgment claims under both the Uniform Declaratory Judgments Act (UDJA) and section 2001.038 of the APA, asserting that eyebrow threading is not within the statutory scope of cosmetology. Khan also sought injunctive relief to restrain appellants' acts against her. Appellants filed pleas to the jurisdiction as to Khan's declaratory claims. The district court granted only the Commission's plea to the jurisdiction but denied the others, and proceeded to grant a temporary injunction against appellants.

In two issues, appellants argue that the district court erred in denying their other plea to the jurisdiction and in granting Khan a temporary injunction. We will reverse the district court's order denying the plea to the jurisdiction and dismiss Khan's declaratory claims. However, finding no abuse of discretion with respect to the temporary injunction, we will affirm that order.

**BACKGROUND**

Khan operates several Texas businesses that provide eyebrow threading services under the names "Salon Rupa" or "Shapes Brow Bar." Simply described, eyebrow threading is a method of shaping eyebrows by using a piece of 100-percent cotton thread to pull individual

---

[1] *See* Tex. Occ. Code Ann. §§ 51.051(b), .052 (West 2004).

2

hair follicles out of the skin's pores. The technician twists about two feet of thread around her fingers, makes a loop out of the twisted thread, and wraps the loops around the unwanted eyebrow hair to pull it out of the skin from the root. Proponents of eyebrow threading tout it as a more accurate, gentle, and inexpensive method of removing hair than such other methods as waxing and tweezing.

In 2007, two inspectors for the Department, which regulates the practice of cosmetology in Texas, including the licensing of cosmetologists, were at a Houston-area mall to inspect a salon when they noticed a "Salon Rupa" kiosk. After observing the salon's operations and speaking with an employee there, they determined that the kiosk was practicing cosmetology and operating without a license. The investigators obtained the phone number for Khan, who, they learned, operates the kiosk. The investigators informed Khan of their view that eyebrow threading constitutes cosmetology and that, to continue her operations, her business and its employees would have to obtain cosmetology licenses. In the course of its investigation, the Department learned that Khan operates a total of seven mall kiosks across Texas that provide eyebrow threading. Neither Khan's employees, who perform the procedure, nor her businesses have been licensed by the Department.

Based on the Department's investigations, several complaints were opened, and, on November 24, 2008, the Department issued four notices of alleged violation to Khan, for each of four of her business locations. Khan did not respond and, on April 23, 2009, the Department issued a cease and desist order, which applied to all of the four business locations, ordering Khan and Salon Rupa to stop operating without cosmetology licenses. Meanwhile, on March 30, 2009, the

3

Commission also issued orders finding that Salon Rupa employees had been practicing cosmetology without the required licenses and assessing administrative penalties. Khan timely filed motions for rehearing, which were denied. She continued—and continues—to operate her salons, but remitted a cashier's check for a portion of the administrative penalties, to be held in escrow for the pendency of these proceedings.

In June 2009, Khan filed a suit for judicial review of the Commission's order under the APA. Khan named as defendants the Department and its executive director, but not the Commission itself. In her petition, Khan asserted that eyebrow threading does not fall within the statutory definition of cosmetology as set out in section 1602.002(a) of the occupations code. *See* Tex. Occ. Code Ann. § 1602.002(a) (West Supp. 2009). Khan sought reversal of the Commission's order on grounds that it was arbitrary and capricious, an abuse of discretion, in excess of the Commission's statutory authority, and made through unlawful procedure. In response to this pleading, a plea to the jurisdiction was interposed on the ground that the Department's executive director was not a proper or necessary party. No further action was taken by either party on Khan's suit for judicial review.

Subsequently, Khan filed a separate suit against appellants, asserting claims for declaratory relief under both the UDJA and APA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008); Tex. Gov't Code Ann. § 2001.038 (West 2008). She sought declarations that "threading" is not included in the definition of "cosmetology" or "facial treatment," and that "thread" is not included in the definition of "appliance" or "depilatory," as set out in the occupations code. *See* Tex. Occ. Code Ann. § 1602.002. Khan also sought declarations that appellants' conduct

4

exceeded their statutory authority and had violated various of her rights guaranteed by the United States and Texas constitutions, including equal protection, privileges and immunities, and due course of law. Khan also sought attorney's fees pursuant to her UDJA claim. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). Khan further requested a temporary restraining order and temporary and permanent injunctions, *see id.* §§ 65.011, 65.021 (West 2008).

Appellants answered and filed a plea to the jurisdiction and motion to dismiss, arguing that the district court has no subject-matter jurisdiction under section 2001.038 of the government code, as Khan does not contest the validity or applicability of a Commission rule, and that the district court has no jurisdiction to grant relief under the UDJA because Khan failed to allege a viable ultra vires claim and the declaratory relief she sought could be obtained by means of a suit for judicial review. In addition, appellants argued that Khan had not alleged facts that affirmatively demonstrated the district court's jurisdiction to hear her constitutional claims. Appellants also argued that Khan's claims for injunctive relief should be denied. About the same time, appellants filed a motion to consolidate Khan's suit for judicial review with her declaratory-judgment suit, asserting that the two cases involve common questions of law and fact, as both center on whether or not Khan's threading business falls within the statutory scope of practice of cosmetology.

The district court heard appellants' plea to the jurisdiction and motion to dismiss in the declaratory-judgment suit on January 5, 2010. On February 19, the court signed an order granting the plea and motion to dismiss only as to "Plaintiff's Uniform Declaratory Judgment Act ultra vires claims against Defendant Texas Commission of Licensing and Regulation" and otherwise

5

denying them. Subsequently, on February 24, 2010, the district court signed an agreed order consolidating Khan's suit for judicial review with her declaratory-judgment suit. On the following day, the district court signed an order temporarily enjoining appellants from taking any action to further investigate, regulate, or otherwise disrupt Khan's business.

Appellants appeal both the district court's order granting the temporary injunction and (except for the Commission, which prevailed on its plea) the order denying the plea to the jurisdiction with respect to Khan's declaratory claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(4),(8) (West 2008).

## ANALYSIS

In their first issue, appellants argue that the district court erred in partially denying their plea to the jurisdiction against Khan's declaratory claims. They urge that Khan failed to invoke the district court's subject-matter jurisdiction to grant relief under the UDJA because such relief was available through a suit for judicial review and because Khan failed to allege any ultra vires conduct. Appellants further assert that Khan failed to invoke the district court's subject-matter jurisdiction under section 2001.038 of the government code because she failed to present a valid challenge to an agency rule.

A plea to the jurisdiction challenges a trial court's authority to adjudicate a plaintiff's cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*,

6

852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Id.* at 226-27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227.

When deciding a plea to the jurisdiction, we may consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings. *Miranda*, 133 S.W.3d at 227. To the extent the challenge implicates the merits of the plaintiff's cause of action, as here, the party asserting the plea has the burden of negating a genuine issue of material fact as to the jurisdictional fact's existence, the same burden a movant must meet to prevail on a traditional summary-judgment motion. *See id.* at 227-28. Whether the party meets this burden is a question of law that we review de novo. *Id.* at 228. In making this determination, we take as true all evidence favorable to the pleader and indulge every reasonable inference and resolve any doubts in the pleader's favor. *Id.*

To establish a trial court's subject-matter jurisdiction to grant relief under the UDJA, a party must plead the existence of an "underlying controversy" within the scope of section 37.004 of the civil practice and remedies code. *Strayhorn v. Raytheon E-Sys., Inc.*, 101 S.W.3d 558, 572

7

(Tex. App.—Austin 2003, pet. denied). However, the power of courts to issue declaratory judgments under the UDJA in the face of administrative proceedings is limited. *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267 (Tex. App.—Austin 2002, no pet.). When a statute provides an avenue for attacking a final agency order, a declaratory-judgment action directed at that order will not lie. *Id.*; *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 911 (Tex. App.—Austin 1998, pet. denied); *Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied). This is so because a party is generally not entitled to redundant remedies. *See Young Chevrolet*, 974 S.W.2d at 911; *Ben Robinson*, 934 S.W.2d at 153. "There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).

Here, four final agency orders, applying to the four Salon Rupa locations at issue here, have already been issued against Khan. The legislature has provided Khan an avenue to challenge these orders through a suit for judicial review under the APA. The APA waives sovereign immunity and authorizes the district court to review the orders and to reverse and remand them to the agency if it determines that the decisions or its underlying findings, inferences, conclusions, or decisions are "in violation of a constitutional or statutory provision" or "in excess of the agency's statutory authority." *See* Tex. Gov't Code Ann. § 2001.174(2)(A) & (B) (West 2008).

Under the circumstances of this case, the relief Khan seeks under the UDJA would add nothing to the relief that would be explicit or implicit if she prevailed in her suit for judicial review. *See id.* Both claims turn on whether or not eyebrow threading is within the statutory scope of practice of cosmetology, as set out in the occupations code, which in turn will determine whether or not the Department has authority to regulate it. Although Khan brought additional constitutional claims in her suit for declaratory judgment, none of those claims challenged the facial validity of a statute or rule, and each of those claims could have—and, therefore, should have—been brought in the form of a suit for judicial review. *See id.* § 2001.174(2)(A). In addition, the effect of a favorable ruling in either lawsuit would be the same—if Khan prevails in either suit, the result would be a determination that the Department has no authority to regulate eyebrow threading. The Department's orders would be reversed, and, pursuant to this judicial determination, the Department would be unable to interfere with the operations of any of Khan's kiosks, including the three not at issue here. *See SWEPI LP v. Railroad Comm'n of Texas & Hidalgo County*, No. 03-09-00425-CV, 2010 Tex. App. LEXIS 3635, at *40 (Tex. App.—Austin May 11, 2010, pet. filed).

Khan argues, however, that the redundant remedies doctrine is inapplicable, as her attack on the Commission's order is not the entirety of the relief she seeks. Citing this Court's decision in *Ben Robinson Co. v. Texas Workers' Compensation Commission*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied), Khan argues that the remedy she seeks goes beyond an attack on the agency orders because her declaratory-judgment action challenges the constitutional validity of the cosmetology act as it applies to eyebrow threading in general. According to Khan, her declaratory-judgment action "asks the court to construe § 1602.002 generally to determine

9

whether threading falls under the statute, and Khan challenges the validity and applicability of the cosmetology rules outlined at 16 Texas Administrative Code ch. 83." In addition, Khan argues, the Department orders only affect four of seven locations, and her ability to operate her three other locations would remain undecided absent resolution of her declaratory-judgment action.

In *Ben Robinson*, the Ben Robinson Company argued that the Occupational Safety and Health Act preempts the Extra-Hazardous Employer Program, thereby challenging the constitutionality of a portion of the Workers' Compensation program. *Id.* at 151. In arguing that the case should be dismissed, the Texas Workers' Compensation Commission invoked the redundant remedies doctrine, contending that the APA provided a method—and, therefore, the exclusive remedy—for attacking the Commission's order. *Id.* at 153. This Court disagreed, finding that the Company's declaratory-judgment action was directed, not at the agency order, but at the constitutionality of an entire program. *Id.*

Here, unlike in *Ben Robinson*, the basis of Khan's declaratory-judgment action is simply that the Department has no authority to regulate eyebrow threading because eyebrow threading does not constitute the practice of cosmetology. Although she presents several constitutional arguments as to how the Department's actions affect her individually, she makes no broad constitutional challenge to the entire statutory scheme similar to that made by the Company in *Ben Robinson*. Her constitutional arguments can be asserted under the APA, as the underlying basis for each argument remains that eyebrow threading does not fall under the definition

of cosmetology.[2]  The APA expressly authorizes this type of lawsuit.  *See* Tex. Gov't Code Ann. § 2001.174(2)(A).[3]  Because the relief Khan seeks under the UDJA would be considered "redundant" of her APA judicial-review claim, she has failed to invoke the district court's subject-matter jurisdiction to grant such relief, and the district court should have dismissed those claims.

Khan's cause of action under section 2001.038 also fails, as she has failed to assert a valid rule challenge.  *See* Tex. Gov't Code Ann. § 2001.038.  Khan does not challenge the validity or applicability of a rule but, rather, the Department's interpretation that the governing statute encompasses eyebrow threading.  In determining that eyebrow threading falls under the statutory definition of cosmetology, the Department relies only on its interpretation as expressed by its notices of violation to Khan and its final orders finding Khan in violation of the statute, not on any "statement of general applicability" that "implements, interprets, or prescribes law or policy" or

---

[2] Khan's equal protection claim is that eyebrow threading should not fall under the definition of cosmetology when tattoo artistry does not.  Khan's argument in support of both her privileges and immunities claim and due course of law claim is that the Department has interfered with her "right to earn an honest living" by including the art of eyebrow threading in the definition of cosmetology and, thereby, attempting to regulate her practice.

[3] Similarly, we conclude that *Texas Municipal Power Agency v. Public Utility Commission* (*TMPA I*), 100 S.W.3d 510, 517-20 (Tex. App.—Austin 2003, pet. denied) does not aid Khan here.  Relying on *Ben Robinson Co. v. Texas Workers' Compensation Commission*, 934 S.W.2d 149, 155 (Tex. App.—Austin 1996, writ denied), and *Public Utility Commission v. City of Austin*, 728 S.W.2d 907, 910-11 (Tex. App.—Austin 1987, writ ref'd n.r.e.), this Court held that TMPA's request for statutory construction and challenge to the PUC's authority was a proper claim under the UDJA and not redundant of its suit for judicial review.  *TMPA I*, 100 S.W.3d at 520.  Following remand to the trial court, the case was eventually appealed to the Texas Supreme Court.  After determining that the PUC did not have authority to set rates in the manner set out in the challenged order, the supreme court remanded the case to this Court to determine whether TMPA's UDJA claim was redundant of its APA claims.  *Texas Mun. Power Agency v. Public Util. Comm'n* (*TMPA III*), 253 S.W.3d 184 (Tex. 2007).  On remand, we held that TMPA's UDJA claim was, indeed, redundant of its suit for judicial review.  *Texas Municipal Power Agency v. Public Util. Comm'n* (*TMPA IV*), 260 S.W.3d 647 (Tex. App.—Austin 2008, no pet.).

11

"describes the procedure or practice requirements of a state agency." *See* Tex. Gov't Code Ann. § 2001.003(6) (West 2008); *Texas Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 904-05 (Tex. App.—Austin 2009, no pet.). Accordingly, we sustain appellants' first issue.

In their second issue, appellants argue that the district court abused its discretion in granting Khan a temporary injunction. We reverse a trial court's decision to grant or deny a temporary injunction only for a clear abuse of discretion. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex. 1993). A trial court abuses its discretion when it acts arbitrarily, unreasonably, and without reference to guiding rules or principles, or misapplies the law to the established facts of the case. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). We may neither substitute our judgment for that of the trial court nor resolve the merits of the underlying case. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). Rather, we review the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor. *See Universal Health*, 24 S.W.3d at 576.

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Walling*, 863 S.W.2d at 57. For a temporary injunction to issue, the movant must show: (1) a viable cause of action; (2) a probable right to recovery; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

The basis of Khan's request for injunctive relief was that, because the definition of cosmetology does not include eyebrow threading, appellants were acting outside their authority and that, in the absence of an injunction, Khan would have no relief against their ultra vires actions.

12

Because the district court agreed with Khan, expressly finding that Khan is likely to succeed on the merits, it granted Khan's temporary injunction. Although we have determined that Khan could not proceed on her declaratory-judgment action, her cause of action for judicial review under the APA would remain as a potential basis for injunctive relief. Consequently, we must now determine whether the district court committed a clear abuse of discretion in concluding that Khan has a valid cause of action under the APA's judicial review provisions, that she is likely to prevail, and that, absent a temporary injunction, irreparable injury in the interim is likely. *See id.*

Our primary objective in statutory construction is to give effect to the legislature's intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). However, with regard to a statute that an agency is charged with enforcing, we give "serious consideration" to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language, and this is particularly true when the statute involves complex subject matter within the agency's area of expertise. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008); *cf. Rylander v. Fisher Controls Int'l, Inc.*, 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.) (courts "do not defer to administrative interpretation in

regard to questions which do not lie within administrative expertise or deal with a nontechnical question of law").

The Department oversees the licensing and operation of various types of businesses in Texas, including cosmetology. *See* Tex. Occ. Code Ann. § 51.051 (West 2004), § 1603.002 (West Supp. 2009). Of relevance here, the definition of cosmetology includes:

> (7) beautifying a person's face, neck, or arms using a cosmetic preparation, antiseptic, tonic, lotion, powder, oil, clay, cream, or appliance;
>
> (8) administering facial treatments;
>
> (9) removing superfluous hair from a person's body using depilatories or mechanical tweezers;

*Id.* § 1602.002. The Department argues that eyebrow threading constitutes the practice of cosmetology in three ways: eyebrow threading involves "beautifying a person's face" using an "appliance," *see id.* § 1602.002(7), "administering a facial treatment," *see id.* § 1602.002(8), and "removing superfluous hair from a person's body using depilatories," *see id.* § 1602.002(9).

Khan does not dispute that eyebrow threading beautifies a person's face but, rather, argues that the thread used is not a "cosmetic preparation, antiseptic, tonic, lotion, powder, oil, clay, cream, or appliance." *See id.* Although the occupations code includes no definition of "appliance," it is defined by Webster's as "something applied to a purpose or use: as . . . a tool, instrument, or device specially designed for a particular use." Webster's Third New International Dictionary 104 (2002). As appellants assert, a thread could be considered an instrument or device designed for a particular use. However, the evidence presented shows that no particular type of thread is required

14

for eyebrow threading and that common household thread, available for purchase in craft shops, is suitable and, indeed, is used by Khan in her operations.

Further, whether eyebrow threading falls under the definitions of a "facial treatment" or whether a thread could be considered a "depilatory" is subject to debate. The occupations code provides no definition of "depilatory," but Webster's defines it as "having the power to remove hair" or "a cosmetic for the temporary removal of undesired hair" or "a chemical preparation usu. of sulfide used to remove hair, wool, or bristles from hide." *Id.* at 605. At least one of these definitions refers to a depilatory as a "chemical" and other dictionary definitions commonly describe a depilatory as a "cream" or "chemical." *See, e.g.*, http://dictionary.reference.com/ (defining "depilatory" as an "agent in a mild liquid or cream form for temporarily removing unwanted hair from the body"). As such, a piece of thread would not fall under the definition of depilatory. *See* Tex. Occ. Code Ann. § 1602.002(7). And, according to agency rule, a "facialist" is a person "authorized to practice . . . the temporary removal of hair by the use of depilatory, mechanical tweezers and wax." 16 Tex. Admin. Code § 83.10(9) (2010). If a thread is not a depilatory, eyebrow threading, likewise, could not be considered to be the administration of a facial treatment. *See* Tex. Occ. Code Ann. § 1602.002(8).

According to the definition of cosmetology set out in the occupations code and the evidence so far presented as to what an eyebrow thread is and how it is used, the district court's determination that Khan is likely to prevail in her suit for judicial review is reasonable. Although appellants argue that the Department's interpretation of eyebrow threading as included in the definition of cosmetology is entitled to deference, we disagree that the question before us is one that

lies within any particular administrative expertise and we, therefore, afford no particular deference to the Department's interpretation. *See Fisher Controls Int'l, Inc.*, 45 S.W.3d at 302.

As noted, the purpose of a temporary injunction is to preserve the status quo pending a trial on the merits, and we may dissolve the district court's temporary injunction only for a clear abuse of discretion. *Walling*, 863 S.W.2d at 57-58. On the present record, we cannot conclude that the district court abused its discretion in concluding that Khan has shown that she has a viable cause of action as to her suit for judicial review, a probable right to recovery based on the plain language of the statute, and a probable, imminent, and irreparable injury in the form of lost business and profits in the interim. Consequently, we decline to overturn the district court's order. *See id.* Accordingly, we overrule appellants' second issue.

## CONCLUSION

Having determined that Khan did not invoke the district court's subject-matter jurisdiction over her declaratory claims, we reverse the district court's order partly denying appellants' plea to the jurisdiction as to those claims and render judgment dismissing them. However, having found no clear abuse of discretion, we affirm the district court's order granting Khan a temporary injunction.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed in part; Reversed and Rendered in part

Filed: August 31, 2010

16