**BEN ROBINSON COMPANY, Appellant,**

v.

**TEXAS WORKERS' COMPENSATION COMMISSION and its members in their official capacity, O.D. Kenemore, Ramon Class, Jack Garey, Royce Faulkner, Donna L. Snyder and John Nash, Appellees.**

No. 03–95–00522–CV.

Court of Appeals of Texas, Austin.

July 31, 1996.

Rehearing Overruled Oct. 16, 1996.

Mark S. Dreux, Arthur G. Sapper, Melissa L. Peppe, McDermott, Will & Emery, Washington, DC, Robin Robinson, Houston, for Ben Robinson Co.

Dan Morales, Attorney General, Dewey E. Helmcamp, III, Assistant Attorney General, General Counsel Division, Austin, for appellees.

Before POWERS, JONES and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

This appeal requires us to decide whether the Occupational Safety and Health Act, 29 U.S.C. § 651 (1982), preempts the Extra–Hazardous Employer Program ("the Program") as it is currently administered by the Workers' Health and Safety Division of the Texas Workers' Compensation Commission. *See* Tex.Lab.Code Ann. § 411.041 (West 1996); 28 Tex.Admin.Code § 164.1 (West 1996). We conclude that it does.

## BACKGROUND

The Ben Robinson Company ("the Company") is a small Houston corporation in the business of selling steel pipe and tubing. As the Company's vice-president, Gerald Robinson handled sales, customer orders, and performed general office work. In September 1992, Gerald Robinson took a call from a truck driver scheduled to pick up a pipe order. The driver announced that he would arrive at the pipe yard around closing time, and asked if he could pick up the order then; Gerald told him that no one would be around to load the pipe that late in the day. The driver persisted in his request, suggesting that he could operate the forklift and load the pipe himself. Gerald called his father Jerry Robinson, the president of the Company, and asked if the driver could pick up the pipe. Jerry instructed his son not to let the driver load the pipe under any circumstances. Despite this admonition, Gerald allowed the persistent driver to load the pipe himself. As the driver was operating the forklift, some of the pipe rolled off, landing on Gerald and killing him.

Based on this fatality, the Workers' Health and Safety Division of the Texas Workers' Compensation Commission ("the Division") identified the Ben Robinson Company as an extra-hazardous employer. *See* Tex.Lab. Code Ann.´ § 411.041(b) (West 1996). This designation required the Company to have a safety consultant inspect the workplace and make a report identifying workplace hazards. *See* Tex.Lab.Code Ann. § 411.043(b) (West 1996). Following the report, the Company and the consultant formulated an "accident prevention plan" directed towards eliminating the identified hazards. *See id.* § 411.043(c). When a follow-up inspection conducted six months later indicated that the Company had complied with the accident prevention plan, the Division removed the

Company's extra-hazardous designation. *See id.* § 411.045.

## DISCUSSION AND HOLDINGS

The Company contends in two points of error that the Occupational Safety and Health Act ("the OSH Act") preempts the Program as it is currently administered in Texas. In its third point of error, the Company claims entitlement to costs and attorney's fees. Before reaching the merits of these claims, however, we must address the Commission's several arguments in support of its contention that the case should be dismissed.

*Grounds for Dismissal*

 The Commission first urges us to dismiss this case as moot. The Commission correctly observes that appellate courts only determine cases in which an actual controversy exists. *See Camarena v. Texas Employment Comm'n,* 754 S.W.2d 149, 151 (Tex. 1988); *University Interscholastic League v. Buchanan,* 848 S.W.2d 298, 304 (Tex.App.— Austin 1993, no writ). The Commission claims that because it lifted the Company's extra-hazardous designation, all justiciable issues between the parties have been resolved and any decision by this Court would be of no practical effect. The removal of this designation does not, however, leave the Company in the position it was in before being labelled extra-hazardous.

First, it is important to note that the lifting of the designation following compliance with the accident prevention plan does not erase the original finding that the Company experienced a substantially higher-than-average injury frequency. *See* Tex.Lab.Code Ann. § 411.041(b) (West 1996). Significantly, the Company's insurance carrier was notified of this fact. *See id.* § 411.042 (requiring division to notify employer's insurance carrier of extra-hazardous designation). Notice of this official determination that the Company has an excessive injury frequency could have an adverse impact on the Company's insurance premiums and ability to obtain future coverage, regardless of the Company's subsequent compliance with an accident prevention plan.

The extra-hazardous designation could also have a detrimental impact on the Company's business affairs. Current and potential customers may consider the extra-hazardous designation a reason to do business elsewhere. The designation may also diminish the overall value of the business.[1] Furthermore, Jerry Robinson asserted in an affidavit that the designation has caused him mental anguish, stress, depression and other medical problems, because the designation effectively states that he was in control of, and therefore could have prevented, the factors which led to his son's death. *See id.* § 411.0415 (fatality due to factors outside employer's control may be excluded from consideration in designating employer as extra-hazardous).

These lasting consequences will persist beyond the lifting of the Company's original extra-hazardous designation. On the other hand, if the Company obtains the relief it seeks, the original designation would effectively be purged and many of the resulting detrimental consequences would vanish. Accordingly, we hold that a live controversy exists between the parties which can be resolved by a decision from this Court.

 Even if the case were moot, we would conclude that it falls within the "capable of repetition yet evading review" exception to the mootness doctrine. *See General Land Office v. OXY U.S.A., Inc.,* 789 S.W.2d 569, 571 (Tex.1990). This doctrine applies "where the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot." *Id.* (citing *Spring Branch I.S.D. v. Reynolds,* 764 S.W.2d 16, 18 (Tex.App.—Houston [1st Dist.] 1988, no writ)). When an employer is designated extra-hazardous, it has between seven and ten months to formulate and implement an accident prevention plan. *See* Tex.Lab. Code §§ 411.043(a), .045 (West 1996); 28 Tex.Admin.Code §§ 164.3(a), 164.5(a) (West 1996). Failure to comply with the plan subjects the employer to severe administrative penalties, leaving the employer with little choice but to comply. *See* Tex.Lab.Code Ann. §§ 411.046, 415.022 (West 1996). This

---

1. Commission records pertaining to the Company's extra-hazardous designation may be subject to disclosure under the Open Records Act. *See* 28 Tex.Admin.Code § 164.2(b)(5) (West 1996).

compliance results in the lifting of the extra-hazardous designation. *See id.* § 411.045(b). Thus, in most cases, the duration of an employer's extra-hazardous status will be less than ten months.

Applying the mootness doctrine in a case such as this one would effectively prevent employers from obtaining judicial review of constitutional challenges to the Program. Indeed, in this case the Company's extra-hazardous designation was lifted even before the trial court rendered its final judgment. Because the short duration of an employer's extra-hazardous status renders it nearly impossible for an employer to obtain judicial review while that status remains pending, we would hold that this case falls within the "capable of repetition yet evading review" exception to the mootness doctrine. *See State v. Lodge,* 608 S.W.2d 910, 912 (Tex. 1980).

■ The Commission further contends that the Company cannot properly maintain its declaratory judgment action because the Administrative Procedure Act (the "APA") provides the exclusive method for attacking an agency order. *See* Tex.Gov't Code Ann. § 2001.171 (West 1996). When a statute provides a method for attacking an agency order, a declaratory judgment action directed at that order will not lie. *See Texas Employment Comm'n v. Child, Inc.,* 738 S.W.2d 56, 58 (Tex.App.—Austin 1987, writ denied), *cert. denied,* 488 U.S. 849, 109 S.Ct. 130, 102 L.Ed.2d 103 (1988); *Railroad Comm'n v. Home Transp. Co.,* 670 S.W.2d 319, 326 (Tex. App.—Austin 1984, no writ) (declaratory judgment does not lie in direct attack on Commission order). This is because a party is generally not entitled to redundant remedies. *See Child,* 738 S.W.2d at 58. In this case, however, the Company directs its declaratory judgment action not at the Commission's order, but at the constitutional validity of the Program itself. This declaratory judgment remedy is distinct from, and therefore not redundant to the remedy provided by the APA. *See Bullock v. Marathon Oil Co.,* 798 S.W.2d 353, 360 (Tex.App.—Austin 1990, no writ) (holding that party could directly attack franchise tax assessment and simultaneously seek declaratory judgment

that Comptroller's rules leading to assessment were unconstitutional). We therefore reject the Commission's assertion that the declaratory judgment action should be dismissed on this basis.

■ As a final ground for dismissal, the Commissioner contends that, because the Company has participated in the workers' compensation system, it cannot now bring a constitutional challenge to the Program. *See Texas Architectural Aggregate v. Adams,* 690 S.W.2d 640, 643 (Tex.App.—Austin 1985, no writ) (party who has availed itself of statute's benefits cannot then attack statute's constitutionality). The Company did not *accept* benefits associated with the Program, however, because it is subject to the Program's requirements regardless of whether it participates in the workers' compensation system. *See* Tex.Lab.Code Ann. § 411.002 (West 1996). We accordingly conclude that the Company's participation in the workers' compensation system does not bar its constitutional challenge to the Program.

*The Extra–Hazardous Employer Program*

An employer whose rate of workplace injuries exceeds the rate reasonably expected for that employer's business or industry is an extra-hazardous employer. Tex.Lab.Code Ann. § 411.041(b) (West 1996); *see also* 28 Tex.Admin.Code § 164.1 (West 1996). The Workers' Health and Safety Division, charged with identifying extra-hazardous employers, has developed a formula for determining whether an employer is extra-hazardous. *See* 28 Tex.Admin.Code § 164.1 (West 1996). The formula essentially compares the employer's actual injury frequency with the frequency expected in the employer's line of work; if the ratio of actual to expected injuries exceeds a pre-determined threshold ratio, the employer is designated extra-hazardous. *See id.* § 164.1(c).

When a fatality is involved, the actual injury frequency is multiplied by a "fatality index," which substantially enlarges the actual injury frequency and almost invariably results in an extra-hazardous designation.

*See* 17 Tex.Reg. 7906 (1993).[2] The Commission chose to assign fatalities more weight under the theory that each fatality represents a significant number of undetected minor injuries and near-misses. Thus, according to the Commission, the fatality index accounts for the probable frequency of undetected injuries attributable to the employer. However, a fatality caused by homicide, suicide, or disease unrelated to employment is excluded from consideration; fatalities involving third-party vehicle accidents, common carrier accidents, or unforeseeable acts of nature are considered as mere injuries, and the fatality index is not invoked. 28 Tex.Admin.Code § 164.14 (West 1996). Further, an employer designated extrahazardous because of a fatality may seek to have the designation removed on the grounds that the fatality occurred because of factors beyond the employer's control. *See* Tex.Lab.Code Ann. § 411.0415(a)(1) (West 1996).

Once the Division designates an employer as extra-hazardous, it must notify the employer, reciting the facts leading to the designation and must give notice to the employer's insurance company of this designation. Tex. Lab.Code Ann. § 411.042 (West 1996); 28 Tex.Admin.Code § 164.2(b)(2) (West 1996). If the employer's records conflict with the facts forming the basis of the designation, the employer can within ten days of the notice request review of the designation by the Division. 28 Tex.Admin.Code § 164.2(b)(4) (West 1996). Additionally, an employer can request a full hearing before an administrative law judge to contest the Division's findings leading to the designation. Tex.Lab.Code Ann. § 411.049 (West 1996); 28 Tex.Admin.Code § 164.2(b)(5) (West 1996); *see also* Tex.Gov't Code Ann. § 2001.058 (West 1996).

If an employer does not successfully contest the extra-hazardous designation, the employer must undergo a workplace safety consultation with a consultant approved by the Division. Tex.Lab.Code Ann. § 411.043(a) (West 1996); 28 Tex.Admin.Code § 164.3(a); *see also* 28 Tex.Admin.Code § 164.9 (West 1996). The consultant is required to inspect the employer's job site for workplace hazards, and to complete a Hazard Survey Report form describing any hazardous practices or conditions. The form instructs the consultant to identify hazards by reference to codified workplace regulations, including regulations enacted under the OSH Act. Thus, if during the inspection the consultant observes a hazard resulting from a violation of an OSH Act regulation, he or she must describe the hazard and list the Code of Federal Regulations citation to the violated regulation. Finally, the consultant must include on the report recommendations for controlling the identified workplace hazards. 28 Tex.Admin.Code § 164.3(d) (West 1996).

Following the inspection and completion of the Workplace Survey Report, the consultant and employer must formulate an "accident prevention plan" designed to correct the identified safety violations. Tex.Lab.Code Ann. § 411.043(c) (West 1996); 28 Tex.Admin.Code § 164.4(a) (West 1996). The plan must be consistent with established federal codes and standards.[3] 28 Tex.Admin.Code § 164.4(a) (West 1996). Failure to bring the workplace into compliance with the appropriate safety regulation constitutes a Class B administrative violation; an employer commits a separate violation for each day of non-compliance. Tex.Labor Code § 411.046 (West 1996). Each violation is punishable by a fine of up to $5,000. *Id.* § 415.022.

Between six and nine months after the formulation of the accident prevention plan, the safety consultant conducts a follow-up inspection of the workplace to determine compliance with the plan. Tex.Lab.Code Ann. § 411.045 (West 1996); 28 Tex.Admin.Code § 164.5 (West 1996). Notice of the compliance determination is provided to the

---

**2.** Since the Company's extra-hazardous designation, the Division has replaced the fatality index with a new formula to account for workplace fatalities.

**3.** Failure to conform the Hazard Survey Report and Accident Prevention Plan to federal workplace safety and health standards constitutes grounds for removing the consultant from the Commission's list of approved professional safety consultants. *See* 28 Tex.Admin.Code § 164.10 (West 1996).

employer and the employer's insurance company. 28 Tex.Admin.Code § 164.6(a) (West 1996). If the employer has complied with the plan or has implemented other acceptable measures to correct the safety violations, the employer's extra-hazardous status is removed. Tex.Lab.Code Ann. § 411.045(b); 28 Tex.Admin.Code 164.7(a) (West 1996). If the employer has complied with the plan but continues to exceed the reasonably expected injury frequency in the employer's business, the employer is placed on "monitoring status" for six months, during which the division monitors injury frequency and may impose additional accident prevention measures. 28 Tex.Admin.Code § 164.7(b), (c) (West 1996). If the inspection reveals failure to implement the plan or alternative corrective measures, the employer remains on extra-hazardous status and is required to submit progress reports to the Division every sixty days indicating steps being taken towards remedying the existing hazards. 28 Tex.Admin.Code § 164.8 (West 1996).

*The Ben Robinson Company*

In 1993, the Division identified the Company as an extra-hazardous employer based solely on Gerald Robinson's fatal injury. Jerry Robinson invoked his right to a hearing and challenged the designation, alleging that the accident was caused by circumstances beyond his control. The hearing officer disagreed, and in a March 1994 order designated the Company as extra-hazardous. Two weeks later, the Company filed suit in district court, attacking the order on the same grounds. The suit did not suspend the Company's obligations under the Program, and remained pending for the duration of the Company's extra-hazardous designation.

As required by statute, Jerry Robinson obtained a safety consultation in April 1994. During the workplace inspection the safety consultant observed six violations of OSH Act regulations, and noted them on the Hazard Survey Report. The consultant identified an additional workplace hazard, and also determined that the Company's recordkeeping on workplace safety matters was inadequate. Jerry Robinson lodged a protest to the Acci-

dent Prevention Plan, asserting that the Commission had no authority to force compliance with it because the OSH Act preempted the entire Program. He stated that he would nonetheless comply to avoid assessment of administrative penalties. Jerry Robinson implemented measures to correct the identified workplace hazards; at the advice of the safety consultant he began maintaining an "OSHA Form 200" to address the recordkeeping deficiencies.[4] The Company reported no injuries during the following six months, and in December 1994 the Commission removed the Company's extra-hazardous status.

In September 1994, the Company filed an amended petition in district court, seeking a declaratory judgment that the Program was preempted by the OSH Act. The Company also sought recovery of its costs and attorney's fees. *See* Tex.Civ.Prac. & Rem.Code § 37.009 (West 1986). In its modified opinion on summary judgment the trial court determined that while the OSH Act generally preempted state workplace safety regulation, the Program fell within a savings clause of the OSH Act and was therefore not preempted. In its final judgment, the trial court denied the request for declaratory judgment, as well as all other relief sought by the Company. The Company appealed the judgment to this Court, asserting in two points of error that the Program does not fall within the savings clause of the OSH Act and is therefore preempted. In its third point of error, the Company alleges that the trial court erred in failing to award its attorney's fees and costs.

*The Occupational Safety and Health Act*

Congress enacted the Occupational Safety and Health Act of 1970 "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources...." 29 U.S.C. § 651(b) (1982). To achieve this purpose, the Act provides for the development and promulgation of occupational safety and health standards, as well as an inspection program to effectively enforce

---

4. As an employer with less than ten employees, the Company was not required by federal law to maintain an OSHA Form 200. *See* 29 C.F.R. § 1904.15 (West 1995).

these standards. *See id.* § 651(b)(3), (9), (10).

With the OSH Act, the federal government entered into a regulatory field traditionally occupied by the States. *Gade v. National Solid Wastes,* 505 U.S. 88, 112 S.Ct. 2374, 120 L.Ed.2d 73, 83 (1992); *see also Medtronic, Inc. v. Lohr,* — U.S. —, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). However, Congress allowed for continued state regulation in those areas for which no federal workplace safety and health standards were in effect. 29 U.S.C. § 667(a) (1982). Congress also preserved for the States the option of entirely displacing federal authority in favor of state regulation:

> Any State which, at any time, desires to assume responsibility for the development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(b) (1982).

A majority of the Supreme Court agreed that by enacting this provision, Congress sought to ensure that employers and employees would be subject to only one set of workplace regulations, be it federal or state. See *Gade,* 505 U.S. at 99–100, 113–14, 112 S.Ct. at 2383–84, 2391, 120 L.Ed.2d at 85, 94. The Court thus held that the Act preempted nonapproved state regulation of occupational safety and health issues for which a federal standard is in place. *Id.* at 98–99, 112 S.Ct. at 2383, 120 L.Ed.2d at 84 (plurality opinion), 93 (Scalia, J. concurring).

The Commission contends that despite this holding, the OSH Act does not preempt the Program. First, the Commission claims that the Program does not actually regulate workplace safety, but instead serves only as an accident prevention plan. The Commission thus asserts that because the OSH Act does not provide a "standard" for an accident prevention plan, the Program is saved from preemption under section 667(a). *See* 29 U.S.C. § 667(a) We disagree.

As part of the safety consultation, the consultant is required to identify workplace hazards and reference them by existing federal standards, including standards promulgated under the OSH Act. *See* 28 Tex.Admin.Code § 164.4 (West 1996). In effect, this means that the consultant inspects the workplace for violation of, among other federal workplace regulations, OSH Act standards. Once the consultant determines that a workplace condition violates an OSH Act standard, the employer is required to correct the violation within six to nine months; failure to do so subjects the employer to penalties of up to $5000 per day. *See* Tex.Lab.Code Ann. §§ 411.046; 415.022 (West 1996). In short, the Program holds the power to fine employers $5000 per day for OSH Act violations.

The Program's overarching purpose of assuring workplace safety does not change the fact that it regulates workplace safety issues already addressed by OSH Act regulations. Indeed, the OSH Act shares the Program's prophylactic purpose of assuring every person "safe and healthful working conditions" and *preserving* human resources. *See* 29 U.S.C. § 651(b) (1982). Like the Program, the OSH Act seeks to prevent future injuries by securing workplace safety. And like the OSH Act, the Program forces compliance with OSH Act standards to accomplish this purpose. As the Supreme Court observed, Congress condemned this duplicative regulation by enacting section 667(b) of the OSH Act. We accordingly hold that section 667(a) of the OSH Act does not save the Program from preemption.

■ The Commission next contends that the Program is saved from preemption by section 653(b)(4) of the OSH Act, which provides:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workman's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4) (1982). The Commission urges a broad reading of this savings

clause, asserting that it shields from preemption any law that is closely related to a state's workers' compensation scheme. Under this broad reading the Program would be saved from preemption because it is integral to the economic viability of the state's workers' compensation law. The Commission asserts that by reducing workplace injuries, the Program will have the effect of lowering workers' compensation premiums, which in turn will make participation in the workers' compensation system affordable for more employers. This broader participation in turn sustains the economic viability of the system. The district court adopted this rationale in rendering judgment in favor of the Commission.

The Company interprets the savings clause more narrowly, claiming that it saves from preemption only those laws directly related to compensation of workers. The Company observes that the Program does not affect the award or amount of compensation in a given case, but instead focuses prospectively on accident prevention and safety. Accordingly, the Company asserts, the Program falls outside the scope of the section 653(b)(4) savings provision.

Under the Commission's broad interpretation of the savings clause, any state workplace regulatory scheme which also had a beneficial effect on the state workers' compensation system would *always* be saved from preemption. We believe this interpretation proves too much. Imposing state workplace safety standards will always benefit the workers' compensation system by improving job safety and consequently reducing disability payments. Indeed, Congress envisioned that imposing OSH Act standards would bring about this very effect of reducing disability compensation payments. *See* 29 U.S.C. § 651(a) (1982). Against the backdrop of this congressional intention to reduce disability payments by imposing workplace safety regulations, the Commission's view of section 653(b)(4) would virtually nullify the preemptive intent behind the OSH Act's section 667(b). *See* 29 U.S.C. § 667(b); *Gade*, 505 U.S. at 98–99, 111–12, 112 S.Ct. at 2383, 2390, 120 L.Ed.2d at 84, 93. We do not believe Congress intended that duplicative state regulations should be saved from pre-

emption by virtue of an effect on workers' compensation already contemplated by the OSH Act itself. We therefore hold that the Program's beneficial effect on the Texas workers' compensation system does not place the Program within the protection of section 653(b)(4). *See* 29 U.S.C. § 653(b)(4) (1982).

Our holding is bolstered by the federal appellate courts' determination that section 653(b)(4) sought only to prevent injured workers from circumventing workers' compensation by claiming a private cause of action based on the OSH Act. *See Pratico v. Portland Terminal Co.*, 783 F.2d 255, 265 (1st Cir.1985). As the First Circuit observed in *Pratico*:

> [T]he Fifth Circuit has found, along with every other court that has considered this issue, that § 653(b)(4) was designed to ensure that OSHA did not permit injured employees to bypass applicable state worker's compensation schemes through a private action in federal court. . . .

*Id.* at 265 (citing *Jeter v. St. Regis Paper Co.*, 507 F.2d 973 (5th Cir.1975)). The *Pratico* court traced the legislative history of this provision in discerning its purpose:

> The legislative history of § 653(b)(4) shows that the intent of the provision was merely to ensure that OSHA was not read to create a private right of action for injured workers which would allow them to bypass the otherwise exclusive remedy of worker's compensation. This can be seen in a letter from the Solicitor of Labor to the Chairman of the House Subcommittee on Labor explaining the operation of the provision:
>
> > Dear Mr. Chairman: This is in response to your recent request for information upon which to base a reply to Mr. James E. Bailey, Legislative Counsel, American Society of Insurance Management, Inc.
> >
> > In his letter, Mr. Bailey expresses concern that under proposed legislation dealing with occupational health and safety "an injured employee could claim violation of the requirements of the legislation and thus bypass the applicable state workmen's compensation benefits through an action in the Federal courts."

The provisions of S.2788, the Administration' proposed Occupational Safety and Health Act of 1969 would in no way affect the present status of the law with regard to workmen's compensation legislation or private tort actions.

*Id.* at 266 (citations to legislative history omitted). The federal appellate courts' interpretation of section 653(b)(4) amounts to a clear rejection of the broad reading advocated by the Commission.

 As a result of the holding in *Gade*, regulation of workplace hazards by a state is permitted in only two limited instances. First, a state may enact its own workplace regulatory scheme under the authority of section 667(b). *See* 29 U.S.C. § 667(b) (1982). Second, a state may regulate workplace safety issues which are not already addressed by an existing federal standard. *See id.* § 667(a). A state without an approved regulatory plan may not, however, regulate workplace safety issues for which a federal standard is already in effect. Because the Extra–Hazardous Employer Program regulates workplace safety issues already addressed by the OSH Act, and because the Program does not fall within the savings clause of section 653(b)(4), we hold that the Program as currently administered is preempted by the OSH Act. See *Gade*, 505 U.S. at 98–99, 111–12, 112 S.Ct. at 2383, 2390, 120 L.Ed.2d at 84, 93. We accordingly sustain the Company's first and second points of error.

### Costs and Attorney's Fees

In its third point of error the Company claims entitlement to costs and attorney's fees. *See* Tex.Civ.Prac. & Rem.Code Ann. § 37.009 (West 1986). The supreme court has held that the Declaratory Judgment Act waives governmental immunity for the award of attorney's fees. *Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446; *see also Elgin Bank v. Travis County*, 906 S.W.2d 120, 124 (Tex.App.—Austin 1995, writ denied). In light of our disposition of points of error one and two, we remand to the trial court the issue of attorney's fees and costs. *See Elgin Bank*, 906 S.W.2d at 124.

## CONCLUSION

We render judgment that to the extent the Program addresses workplace safety issues for which an OSH Act standard is in effect, the Program is preempted by the OSH Act. We accordingly reverse the trial court's summary judgment in favor of the Commission, and remand the issue of costs and attorney's fees.