# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00814-CV

Appellant, A. I. Divestitures, Inc.//
Cross-Appellants, The Texas Commission on Environmental Quality; and
Richard Hyde, in his Official Capacity as
Executive Director of the Texas Commission on Environmental Quality

v.

Appellees, The Texas Commission on Environmental Quality; and
Richard Hyde, in his Official Capacity as
Executive Director of the Texas Commission on Environmental Quality//
Cross-Appellee, A. I. Divestitures, Inc.

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-GN-14-000770, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from the district court's order granting in part and denying in part a plea to the jurisdiction filed by the Texas Commission on Environmental Quality and Richard Hyde, in his official capacity as Executive Director of the Texas Commission on Environmental Quality (collectively, the Commission). The Commission's plea challenged the trial court's subject matter jurisdiction over A. I. Divestitures, Inc.'s suit for judicial review of a 2013 compliance history rating assigned to it by the Commission, along with related requests for declaratory relief under the Uniform Declaratory Judgments Act and the Administrative Procedure Act. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011; Tex. Gov't Code § 2001.038. The Commission also challenged the

trial court's subject matter jurisdiction over A.I.'s breach of contract claim against the Commission. We will affirm in part, reverse in part, and dismiss the case for lack of subject matter jurisdiction.

**BACKGROUND**

The Commission annually assigns a compliance history rating to entities regulated by certain chapters of the Texas Water Code and the Texas Health and Safety Code. *See* Tex. Water Code § 5.751 (applicability of performance-based regulation provisions found in Texas Water Code sections 5.751 through 5.758). The components of a compliance history are set forth in agency rules promulgated pursuant to Water Code section 5.753 and include orders developed under Water Code section 7.070. *See id.* §§ 5.753 (directing Commission to develop uniform standard for evaluating compliance history and identifying required components), 7.070 (governing agreed administrative orders settling alleged environmental violation); 30 Tex. Admin. Code § 60.1(c) (Tex. Comm'n on Envtl. Quality, Compliance History) (setting forth twelve components of compliance history). The Legislature has also directed the Commission to establish by rule a period for compliance history. *See* Tex. Water Code § 5.753(e). The Commission's rule establishing the compliance history period provides that it:

> includes the five years prior to the date the permit application is received by the executive director; the five-year period preceding the date of initiating an enforcement action with an initial enforcement settlement offer or the filing of an Executive Director's Preliminary Report, whichever occurs first; for purposes of determining whether an announced investigation is appropriate, the five-year period preceding an investigation; or the five years prior to the date the application for participation in an innovative program is received by the executive director.

30 Tex. Admin. Code § 60.1(b). Thus, the rule provides that a regulated entity's compliance history includes relevant events during the five-year period before the Commission's regulatory authority is initiated or invoked. *Id.* According to the Commission, it annually evaluates a regulated entity's compliance history and assigns it a compliance history rating in order to classify that entity as a "high performer," a "satisfactory performer," or an "unsatisfactory performer." *See id.* § 60.2(a) (Classification). The compliance history rating is calculated each year as of September 1 based on events relevant to the twelve components of the compliance history that occurred in the preceding five-year period. The Commission typically publishes the regulated entity's annual compliance history rating and resulting classification in its online Compliance History Database on or about November 15 each year.

In November 2013, the Commission published A. I.'s compliance history rating for the time period from September 1, 2012 through August 31, 2013 (the "2013 rating"). The 2013 rating caused the Commission to classify A. I. as an "unsatisfactory performer." The sole basis for the 2013 rating was an agreed final judgment (AFJ) rendered by a Travis County district court in May 2011. The AFJ settled all disputes in an enforcement action the Commission brought against A.I. alleging violations of the Texas Water Code and the Texas Health and Safety Code related to antimony smelting operations at a site A.I. owned. A.I. filed an appeal of the classification with the Commission's executive director challenging the 2013 rating and resulting classification. A.I. argued that the AFJ should not have been considered in calculating A.I.'s compliance history rating because the AFJ recites that it "does not constitute any evidence or admission of any kind regarding any issues set forth [therein], nor does it acknowledge or demonstrate that [A.I.] engaged in any

3

unlawful activity or violated any law, statute, or regulation." A.I. further argued that the terms of the AFJ itself prohibit its use "in any other proceeding, administrative, civil or criminal action as an admission or agreement of any alleged fact or other allegation or conclusion set forth in the State's Original Petition or any Amended or Supplemental Petition." A.I. argued that the Commission had entered into a specially negotiated AFJ with specific language precluding its use in situations such as calculating compliance history and that, by considering the AFJ in calculating A.I.'s 2013 rating, the Commission had violated a valid court order. A.I. maintained that while Commission rules addressed the use of non-adjudicated final court judgments containing denials of liability to calculate compliance history scores, they did not permit the Commission to violate a court order's affirmative prohibition. A.I. also argued that Water Code section 5.753(b) did not allow the use of the AFJ "under these circumstances." *See* Tex. Water Code § 5.753(b) (components of compliance history must include enforcement orders, court judgments, consent decrees, and criminal convictions relating to compliance). The Commission declined to revise the unsatisfactory classification.

A.I. then filed suit for judicial review of the 2013 rating. *See id.* § 5.351 (judicial review of Commission acts). A.I. alleged that by using the AFJ and its underlying enforcement allegations to calculate A.I.'s 2013 rating, the Commission failed to follow its own rules and acted in an arbitrary and capricious manner requiring reversal of the compliance history decision. A.I. sought a declaration under the Uniform Declaratory Judgments Act (UDJA) that the Commission was barred from using the AFJ and its underlying enforcement allegations in calculating the 2013 rating. *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011. A.I. also challenged Commission rules 60.1 and 60.2 to the extent they permitted the Commission to consider a court judgment that does

4

not include a finding of fact or conclusion of law establishing that the regulated entity violated any law. *See* Tex. Gov't Code § 2001.038 (prescribing circumstances under which validity or applicability of agency rule may be determined in action for declaratory judgment). According to A.I., the enabling legislation mandates that the Commission may consider only court judgments that include a documented violation of law, and rules that would permit the Commission to consider any court judgment, regardless of whether it documents a violation, would not comport with the Commission's authorizing statute. *See Harlingen Family Dentistry, P.C. v. Texas Health & Human Servs. Comm'n*, 452 S.W.3d 479, 481 (Tex. App.—Austin 2014, pet. dism'd) (rule invalid if it contravenes specific statutory language, is counter to statute's general objectives, or imposes additional burdens, conditions, or restrictions in excess of or inconsistent with relevant statutory provisions).[1] Finally, A.I. alleged that the Commission's consideration of the AFJ in calculating the 2013 rating constituted an *ultra vires* act and a breach of the AFJ, which it contended was a contract between A.I. and the Commission.[2]

The Commission filed a plea to the jurisdiction asserting that A.I.'s suit was moot because the 2013 rating had been superseded by new compliance history ratings issued in 2014 and 2015. The Commission further argued that the UDJA claim was redundant of the suit for judicial review under the Water Code, and that the breach of contract claim was barred by sovereign immunity. After a hearing, the district court granted the plea to the jurisdiction with respect to A.I.'s

---

[1] A.I.'s original petition also included in its rule challenge complaints about the manner in which the Commission applied its rules. A.I. has conceded on appeal that the trial court lacked subject matter jurisdiction over this claim.

[2] A.I. has conceded on appeal that the trial court did not have subject matter jurisdiction over its *ultra vires* claims.

5

claims for declaratory relief except for its request for a declaration that Water Code sections 5.751 through 5.758 were unconstitutional. The court also granted the plea to the jurisdiction as to the breach of contract claim. The court denied the plea to the jurisdiction as to all other causes of action pleaded by A.I., which presumably referred to the suit for judicial review brought pursuant to Water Code section 5.351. Thereafter, A.I. and the Commission each perfected an appeal.

In its appeal, A.I. challenges the trial court's dismissal of its claims for declaratory relief under the UDJA and Texas Government Code section 2001.038 and its breach of contract claim. A.I. asserts that the subject matter of the suit is not moot and, consequently, its requests for declaratory relief do not seek advisory opinions. Alternatively, A.I. argues that in the event the subject matter of the suit is moot, it falls within both the "capable of repetition yet evading review" and the "collateral consequences" exceptions to the mootness doctrine. A.I. also contends that neither the dismissed UDJA claims nor the section 2001.038 claim are redundant of its suit for judicial review. Finally, A.I. argues that its breach of contract claim is not barred by sovereign immunity.

In its appeal, the Commission asserts that because A.I.'s suit for judicial review is moot, the district court erred in denying the plea to the jurisdiction as to that claim. The Commission also argues that the district court should have granted its plea to the jurisdiction as to A.I.'s request for declarations under Texas Government Code section 2001.038 and A.I.'s request for a declaration under the UDJA that Water Code sections 5.751 through 5.758 were unconstitutional because those claims, like A.I.'s other claims for declaratory relief, are both moot and impermissibly redundant of a suit for judicial review under Water Code section 5.351. Thus, in combination, the two appeals in this case challenge every aspect of the district court's order on the Commission's plea to the jurisdiction.

## STANDARD OF REVIEW

The trial court's subject matter jurisdiction may be challenged through a plea to the jurisdiction. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law we review de novo. *Miranda*, 133 S.W.3d at 226. The plaintiff has the burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction. *Id.* We begin with the allegations in the plaintiff's live pleadings, which we construe liberally in favor of jurisdiction and, unless challenged with evidence, take as true. *See id.* at 226-27. We also consider any evidence introduced by the plaintiff relevant to the jurisdictional inquiry. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010); *Blue*, 34 S.W.3d at 555 ("[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised."). When a plea to the jurisdiction challenges the existence of jurisdictional facts that do not implicate the merits and those facts are disputed, the court must make the necessary fact findings to resolve the jurisdictional issue. *See Miranda*, 133 S.W.3d at 226 ("Whether a district court has subject matter jurisdiction is a question for the court, not the jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."). On appeal, any fact findings made to resolve the jurisdictional issue may be challenged, as any other fact findings, for legal and factual sufficiency. *See University of Tex. v. Poindexter*, 306 S.W.3d 798, 806-07 (Tex. App.—Austin 2009, no pet.). This includes implied fact findings if written findings and conclusions are not issued. *Id.*

7

The district court's jurisdiction to adjudicate A.I.'s claims against the Commission is potentially limited by the sovereign immunity doctrine. Absent legislative waiver, sovereign immunity deprives Texas courts of subject matter jurisdiction over a suit against a state agency. *See, e.g.*, *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 620-21 (Tex. 2011). The same immunity extends generally to state officials who are sued in their official capacity, as is the Commission's Executive Director in this case. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009). To invoke the district court's subject matter jurisdiction to adjudicate its claims, A.I. had the burden of pleading or presenting facts that would demonstrate that its claims either come within a legislative waiver of immunity or avoid implicating immunity in the first instance. *See Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 738 (Tex. App.—Austin 2014, pet. dism'd).

**DISCUSSION**

***Suit for Judicial Review of 2013 Rating***

We first consider whether the Commission is correct in its assertion that A.I.'s suit for judicial review is moot and, consequently, despite the legislative waiver of immunity in Water Code section 5.351, the district court nevertheless lacked subject matter jurisdiction over that claim. The Commission points to the fact that the 2013 rating was superseded by the compliance history rating assigned to A.I. in November 2014 and asserts that from the time the 2013 rating was superseded there ceased to be a live controversy concerning the correctness of the Commission's decision to assign that rating, rendering the suit for judicial review of that decision moot. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (case becomes moot when controversy ceases to exist because issues presented are no longer "live" or parties lack legally cognizable interest in

8

outcome); *Camarena v. Texas Emp't Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (case is moot if there are no live controversies between parties and any decision rendered by court would be advisory opinion). A.I. counters that the suit is not moot because the "unsatisfactory performer" classification resulting from the 2013 rating continues to have current, detrimental consequences to A.I.

To support its claim that continuing detrimental consequences mean that this case is not moot, A.I. relies on *Ben Robinson Co. v. Texas Workers' Compensation Commission,* 934 S.W.2d 149, 152 (Tex. App.—Austin 1996, writ denied). In *Ben Robinson*, this Court held that the removal of an extra-hazardous employer designation did not render Ben Robinson Company's challenge to that designation moot. *See id.* This Court based its holding on its determination that removal of the designation would not return the company to the position it was in before being labeled extra-hazardous because (1) the company's insurance carrier had been notified of the fact that the Texas Workers' Compensation Commission had found that the company experienced a substantially higher-than-average injury frequency, (2) current and potential customers could consider the extra-hazardous designation a reason to do business elsewhere, (3) the designation could diminish the overall value of the business, and (4) the company's owner submitted an affidavit stating that the designation, which resulted from the death of his son while working there, caused him mental anguish, stress, depression, and other medical problems because the designation effectively stated that he was in control of, and therefore could have prevented, the factors that led to his son's death. *Id.* The Court concluded that those consequences would persist beyond lifting the extra-hazardous designation *and* would vanish if there were a reversal of the designation as sought in the suit. *Id.*

9

A.I. contends that, as in *Ben Robinson*, negative consequences of the 2013 rating continue to persist even though that rating was superseded by the 2014 compliance history rating. As evidence of this fact, A.I. points to the affidavit of Jamie Kalanta, Vice President and Director for A.I.'s Discontinued Operations Group. Kalanta averred:

> An erroneous and negative compliance history classification by [the Commission] will directly affect A.I. The erroneous classification subjects A.I. to potential future negative environmental permit decisions by [the Commission], increased site investigations and administrative oversight, increased risk of claims by individuals and citizens' groups, and immediate and continued poor public perception. Accordingly, A.I. has been penalized with unwarranted consequences and has suffered damages as a result of [the Commission's] actions.

Significantly, Kalanta does not identify any concrete damages A.I. has suffered, nor does Kalanta present the court with any evidence that A.I. was subjected to increased site investigations or administrative oversight during the time the 2013 rating was in effect, or since, resulting from that designation. A.I. submitted no evidence of any concrete injury, either past or present, resulting from the 2013 rating. *See Texas A & M Univ.-Kingsville v. Yarbrough*, 347 S.W.3d 289, 291 (Tex. 2011) (holding that possibility that "taint" of negative evaluation could lead to unspecified future harm does not present "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"). This distinguishes the present case from *Ben Robinson*, in which the Court was presented with evidence of the company owner's *existing* mental anguish, depression, stress, and other medical problems directly resulting from the extra-hazardous employer designation. Moreover, Kalanta did not aver that any such potential negative consequences would be eliminated if A.I. secured a ruling that the 2013 rating was improperly calculated. A successful suit for judicial review would not eliminate the AFJ whereby

10

A.I. settled, albeit while disclaiming liability, an enforcement action brought by the Commission alleging violations of environmental regulations and agreed to pay substantial civil penalties. The evidence A.I. submitted in response to the Commission's plea to the jurisdiction does not support a finding that there are any lasting consequences of the 2013 rating that would vanish if A.I. was successful in its suit for judicial review. We conclude that A.I.'s suit for judicial review of the superseded 2013 rating is moot.

A.I. argues that, even if moot, its suit for judicial review falls within three exceptions to the mootness doctrine—the "capable of repetition yet evading review" exception, the "collateral consequences" exception, and the "public interest" exception. The capable of repetition yet evading review exception applies in rare circumstances and to invoke it the plaintiff must prove that: (1) the challenged action was too short in duration to be fully litigated before the action ceased or expired and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again. *Lara*, 52 S.W.3d at 184. The Commission and A.I. agree that the AFJ may not be considered in any future compliance history rating calculation because it will be outside the five-year time period established by Commission rule 60.1(b).[3] Thus, A.I. cannot meet the capable-of-repetition element of this exception. Moreover, to conclude that there is a reasonable expectation that A.I. will again have a similar agreed final judgment in an enforcement action used in calculating its compliance history rating requires us to presume that either A.I. will engage in prohibited activities that trigger an enforcement action or that the Commission will bring a groundless enforcement

---

[3]  While the Commission considered the AFJ when calculating A.I.'s 2014 and 2015 compliance history ratings, that action has already been taken, and A.I. has challenged each rating in a separate suit for judicial review.

11

action.  We would have to further presume that the parties would settle such an enforcement action by entering into an agreed judgment that does not include findings of violations of any law.  A.I. is obligated, however, to follow the applicable laws and regulations, and we will not presume that it will fail to do so in order to invoke the "capable of repetition yet evading review" exception to the mootness doctrine.  *See Lara*, 52 S.W.3d at 184 (refusing to presume inmates would commit another crime and thereby again become incarcerated in county jail facility).  Nor will we presume that the Commission will pursue an unjustified or groundless enforcement action against A.I.  We conclude that there is not a reasonable expectation that A.I. will be subject to the same action again.  Thus, the actions by the Commission are not capable of repetition, and the exception does not apply.

Texas law also recognizes a "collateral consequences" exception to the mootness doctrine.  *See Federal Deposit Ins. Corp. v. Nueces Cty.*, 886 S.W.3d 766, 767 (Tex. 1994).  The exception is narrowly limited to situations in which:

> as a result of the judgment's entry, (1) concrete disadvantages and disabilities have in fact occurred, are imminently threatened to occur, or are imposed as a matter of law; and (2) the concrete disadvantages and disabilities will persist even after the judgment is vacated.

*Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 789 (Tex. 2006).  This exception is properly applied when the effect of the judgment would be to stigmatize individuals long after the judgment ceased to operate. *In re Cummings*, 13 S.W.3d 472, 475 (Tex. App.—Corpus Christi 2000, no pet.).  There are no allegations or evidence that bring this case within the narrow circumstances in which courts have adjudicated an otherwise moot controversy because of its collateral consequences.  *See, e.g., State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980) ("collateral consequences" exception

to mootness doctrine applies to appeals from involuntary commitments in mental hospital for period not to exceed 90 days when patient already has been discharged because dismissal of cause as moot does not remove "collateral consequences of a commitment for mental health to the same extent as the reversal of the judgment after appellate review and the pronouncement in writing of the considerations impelling the decision favorable to the aggrieved party"); *J.M. v. State*, 178 S.W.3d 185, 189-90 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (appeal from order to administer psychoactive medication when term of order has expired is not moot).[4]

Finally, A.I. argues that this case falls within a "public interest" exception to the mootness doctrine.[5] That exception "allows appellate review of a question of considerable public importance if that question is capable of repetition between either the same parties or other members of the public but for some reason evades appellate review." *University Interscholastic League v. Buchanan*, 848 S.W.2d 298, 303 (Tex. App.—Austin 1993, no writ). The facts of this case do not justify application of this exception. A dispute between a private entity regulated by the Commission regarding whether the entity's compliance history should include agreed final judgments in

---

[4] Courts have generally applied this exception in cases related to short-term mental health commitment orders, juvenile delinquency adjudications, and custody orders. *See, e.g.*, *State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980) (applying exception to mootness doctrine in case involving involuntary commitment to mental hospital); *Carrillo v. State*, 480 S.W.2d 612, 617 (Tex. 1972) (applying exception to mootness doctrine in case involving juvenile delinquency adjudication); *Ex parte Ullmann*, 616 S.W.2d 278, 280 (Tex. Civ. App.—San Antonio 1981, writ dism'd) (applying exception to protective custody order because of stigma and adverse consequences flowing from such order); *Jones v. State*, 602 S.W.2d 132, 134 (Tex. Civ. App.—Fort Worth 1980, no writ) (applying exception to temporary involuntary commitment order, because of stigma of such order).

[5] The Texas Supreme Court has not addressed the viability of a public interest exception to the mootness doctrine. *See Federal Deposit Ins. Corp. v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994) (noting that supreme court has not previously decided viability of public interest exception and finding it unnecessary to reach that issue under facts of case).

13

enforcement actions in which the entity has disclaimed liability is not a question of such "considerable public interest" that it warrants an advisory opinion. This case does not fit within a public interest exception to mootness. *Cf. Texas Dep't of Pub. Safety v. LaFleur*, 32 S.W.3d 911, 914 (Tex. App.—Texarkana 2000, no pet.) (ruling on whether Texas Department of Public Safety had authority to revoke concealed handgun permit after holder convicted of Class A misdemeanor held to be of considerable public interest because of large number of people licensed to carry guns in Texas); *University Interscholastic League*, 848 S.W.2d at 304 (whether University Interscholastic League's over-19 rule violated Rehabilitation Act of 1973 was within public interest exception to mootness doctrine).

Because A.I.'s suit for judicial review is moot, the trial court lacked subject matter jurisdiction over it and should have granted the Commission's plea to the jurisdiction as to that claim.

### Claim for Declaratory Relief Under the UDJA

A.I. sought a declaration under the UDJA that the Commission was barred from using the AFJ and its underlying enforcement allegations in calculating the 2013 rating for three reasons: (1) Texas Water Code sections 5.751 through 5.758 are unconstitutional, (2) agency rules 60.1 through 60.3 are unconstitutional, and (3) using the AFJ as a scoring component in calculating the compliance history rating is an *ultra vires* and an arbitrary and capricious act. The UDJA provides that a claimant "whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under [it] and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. & Rem. Code § 37.004. The

14

UDJA does not, however, create or increase the district court's subject matter jurisdiction. Rather, it merely provides a remedy when subject matter jurisdiction already exists. *See id.* § 37.003(a) ("A court of record *within its jurisdiction* has power to declare rights, status, and other legal relations . . . .") (emphasis added); *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 114 (Tex. App.—Austin 2007, no pet.). A UDJA action is within the subject matter of the district court when there is a justiciable controversy as to the rights and status of parties actually before the court for adjudication that will actually be resolved by the declaration sought. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004). "A case becomes moot when: (1) it appears that one seeks to obtain a judgment on some controversy, when in reality none exists; or (2) when one seeks a judgment on some matter which, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy." *Bexar Metro. Water Dist. v. City of Bulverde*, 234 S.W.3d 126, 131 (Tex. App.—Austin 2007, no pet.). Here, there is no justiciable controversy between A.I. and the Commission regarding the 2013 rating. As already explained, that controversy is moot, and A.I.'s requested declaration that the Commission was barred from using the AFJ in calculating the 2013 rating would have no legal effect and would be purely advisory, as would a declaration that the challenged Water Code provisions are unconstitutional. To the extent that A.I. seeks a declaration that the Commission is barred from using the AFJ in calculating A.I.'s compliance history rating in the future, such a declaration would also have no legal effect since the Commission is prohibited, by its own rules, from doing so. The district court lacked jurisdiction over A.I.'s UDJA claim and should have dismissed it.[6]

---

[6] Moreover, with respect to A.I.'s claim under the UDJA challenging agency rules 60.1 through 60.3, this Court has previously held that "that sort of claim falls outside the UDJA altogether." *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex.

15

***Claim for Declaratory Relief Under the Administrative Procedure Act***

A.I. sought a declaration under Texas Government Code section 2001.038 that agency rules 60.1 through 60.3 are invalid because they are unconstitutional. The district court dismissed this claim in its order on the Commission's plea to the jurisdiction. Section 2001.038 creates a cause of action for declaratory judgment regarding "[t]he validity or applicability of a rule . . . if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a).[7] Section 2001.038 is a grant of original jurisdiction and waives sovereign immunity. *Id.* § 2001.038(a), (c); *Texas Logos*, 241 S.W.3d at 123. Like other causes of action, however, section 2001.038 requires the existence of a justiciable controversy to establish the district court's subject matter jurisdiction. The controversy A.I. pleaded concerned its assertion that the Commission improperly considered the AFJ in calculating the 2013 rating. We have held that this controversy is moot. Thus, A.I.'s challenge to the validity of rules 60.1 through 60.3 would amount to a mere abstract, advisory opinion. *Cf. Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 529 (Tex. App.—Austin 2002, pet. denied) (district court lacked subject matter jurisdiction over section 2001.038 rule challenge when underlying controversy was extinguished by plaintiff's failure to

---

App.—Austin 2013, no pet.); *see* Tex. Civ. Prac. & Rem. Code § 37.004 ("A person . . . whose rights, status, or other legal relations are affected by a *statute* . . . may have determined any question of construction or validity arising under the *statute* . . . and obtain a declaration of rights, status, or other legal relations thereunder.") (emphases added). A.I. could not under any circumstances seek a declaration under the UDJA regarding an agency rule.

[7] A.I. has abandoned its appeal of the district court's dismissal of any challenge under section 2001.038 to the application of these agency rules and continues to challenge only their validity.

16

exhaust administrative remedies).  The district court properly granted the Commission's plea to the jurisdiction as to A.I.'s section 2001.038 rule challenge.

***Breach of Contract Claim***

A.I. alleged that the AFJ "enumerated" and "ratified" a settlement agreement between A.I. and the Commission.  According to A.I., the settlement agreement constituted a contract between the parties the terms of which provided:

> This Judgment is not admissible in any other proceeding, administrative, civil or criminal action as an admission or agreement of any alleged fact or other allegation or conclusion set forth in the State's Original Petition or any Amended or Supplemental Petition.
>
> It is further stipulated by the parties that Defendants admit no wrongdoing and this Judgment does not constitute any evidence or admission of any kind regarding any issues set forth herein, nor does it acknowledge or demonstrate that Defendants have engaged in any unlawful activity or violated any law, statute, or regulation. Defendants do not admit the truth of any alleged fact, any of the characterizations of Defendants' alleged conduct, or any of the conclusions in the State's Original Petition or Supplemental Petition in this matter.

A.I. asserted that the Commission's subsequent consideration of the AFJ in calculating A.I.'s compliance history rating constituted a breach of those terms of their contract.  In its plea to the jurisdiction, the Commission argued that the breach of contract claim was barred by sovereign immunity. *See Risk Mgmt. Strategies, Inc. v. Texas Workforce Comm'n*, 464 S.W.3d 864, 868 (Tex. App.—Austin 2014, pet. dism'd) (absent legislative waiver, sovereign immunity deprives Texas courts of subject matter jurisdiction over any suit against State).  The district court granted the plea as to the breach of contract claim.

17

On appeal A.I. does not point to any statutory waiver of the Commission's immunity. *See Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012) (sovereign immunity remains intact unless surrendered in express and unequivocal terms by statute's clear and unambiguous waiver); *Risk Mgmt. Strategies*, 464 S.W.3d at 868 (Legislature may consent to suits against State by statute or resolution). Instead, A.I. argues that by bringing and then settling the underlying enforcement actions, the Commission is not immune from this suit for breach of the settlement agreement. Relying on *Reata Construction Corporation v. City of Dallas*, A.I. asserts that by filing suit against A.I., the Commission waived immunity concerning any and all of A.I.'s potential defenses and potential offsets. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Relying further on *Texas A & M University-Kingsville v. Lawson*, A.I. maintains that because the Commission agreed to settle the enforcement action, for which according to A.I. it had waived its immunity, it could not claim immunity from a suit alleging that it breached that settlement agreement. *See Texas A & M Univ.-Kingsville v. Lawson*, 87 S.W.3d 518, 520-23 (Tex. 2002) (holding exception to sovereign immunity exists when suit alleges breach of agreement settling claim for which Legislature has waived State's immunity).

A.I. is correct that, as a general rule, a governmental entity that files suit waives immunity from defenses and offsets to its claims. In *Reata*, the Texas Supreme Court reasoned that because sovereign immunity is a "common-law doctrine," the judiciary has the responsibility of defining the "boundaries" of the doctrine and determining "under what circumstances sovereign immunity exists in the first instance." *Reata*, 197 S.W.3d at 375. The court explained that "a determination that a governmental entity's immunity from suit does not extend to a situation

18

where the entity has filed suit is consistent with the policy issues involved with immunity." *Id.* The court concluded that "where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the government." *Id.* at 376-77.

This Court, however, recently considered *Reata* in the context of a governmental entity's enforcement action seeking civil penalties, as opposed to damages, under the Texas Medicaid Fraud Prevention Act. *See Nazari v. State*, No. 03-15-00252-CV, 2016 WL 767997, at *5-9 (Tex. App.—Austin Feb. 26, 2016, no pet. h.). We concluded that the civil penalties the State sought did not qualify as *damages* or *monetary relief* as those terms were used in *Reata*. *Id.* at *8. We held that when the State "pursues an enforcement action under the Act, it is not acting as an ordinary or private litigant as described in *Reata* but is instead acting in its sovereign capacity and exercising its police powers," and that by initiating the enforcement action "the State did not 'leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive to'" the claims that the State asserted. *Id.* (quoting *Reata*, 197 S.W.3d at 377). Following *Nazari*, and for the reasons set forth therein, we hold that the Commission did not waive its sovereign immunity by bringing an enforcement action against A.I. seeking to impose civil penalties for violations of the Texas Water Code and the Texas Health and Safety Code.

Similarly, because the Commission did not waive its sovereign immunity, the AFJ does not constitute an agreement settling a claim for which the Commission has waived its immunity. Thus A.I.'s reliance on the *Lawson* exception to the general common law rule that

sovereign immunity shields the State from a suit for breach of contract is misplaced. In *Lawson*, the supreme court held that when the Legislature has chosen to waive immunity as to a cause of action against the government and the government settles the claim and then allegedly breaches the settlement agreement, it may not invoke sovereign immunity as a bar to a breach of contract claim. *Lawson*, 87 S.W.3d at 521-23. "The essence of *Lawson*'s reasoning is that applying immunity in such instances would invert the doctrine's own justification by causing courts to thwart, rather than defer to, the legislative policy judgments reflected in the decision to waive immunity in the first place." *Travis Cty., Tex. v. Rogers*, No. 03-14-00186-CV, 2015 WL 4718726, at *5 (Tex. App.—Austin July 29, 2015, no pet.) (mem. op.) (Pemberton, J., concurring). In this case there is no legislative waiver of the Commission's immunity such that applying immunity to A.I.'s suit for breach of an agreement settling the enforcement action would thwart the Legislature's policy judgments in waiving immunity in the first place. *See Lawson*, 87 S.W.3d at 521 ("[W]hen a governmental entity is exposed to suit because of a waiver of immunity, it cannot nullify that waiver by settling the claim with an agreement on which it cannot be sued . . . without defeating the purpose of the waiver in the first place."). The *Lawson* exception to sovereign immunity is simply not implicated when there has been no legislative waiver of the State's immunity. A.I.'s breach of contract claim was barred by sovereign immunity, and the district court properly granted the Commission's plea to the jurisdiction as to that claim.

### *Opportunity to Amend*

A.I. asserts that, rather than dismiss its suit for lack of subject matter jurisdiction, we should remand the case to the district court to afford A.I. an opportunity to replead. *See Texas*

20

*Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) ("A plaintiff has a right to amend her pleadings to attempt to cure pleading defects if she has not alleged enough jurisdictional facts."). "Appellate courts generally must remand a case to afford parties an opportunity to cure jurisdictional defects in their pleadings when the parties did not have that opportunity in the first instance because the jurisdictional issue arose for the first time on appeal." *Clint Indep. Sch. Dist. v. Marquez*, No. 14-0903, 2016 WL 1268000, at *14 (Tex. Apr. 1, 2016) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 96-97 (Tex. 2012) and *Miranda*, 133 S.W.3d at 231). Here, however, A.I. had the opportunity to, and in fact did, amend its pleadings in the district court after the Commission filed its plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 231 (observing that parties had opportunity to amend their pleadings and did so and were not entitled to another opportunity to replead). A.I. had the opportunity to allege facts and present evidence demonstrating that it fell within an exception to the mootness doctrine in response to the Commission's first and amended pleas to the jurisdiction yet failed to do so. Furthermore, the right to amend typically arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction as opposed to when the jurisdictional bar arises from the nature of the plaintiff's claims. *See Ramirez*, 74 S.W.3d at 867 ("A plaintiff has a right to amend her pleadings to attempt to cure pleading defects if she has not alleged enough jurisdictional facts."). We have concluded that most of A.I.'s claims are moot and that its breach of contract claim is barred by sovereign immunity.[8] Repleading will not revive moot claims or establish a waiver of immunity. We therefore decline A.I.'s request for a remand.

---

[8] A.I. has not identified any additional facts it would allege in support of its claim that the controversy is still live because of concrete and persistent negative consequences that continue to exist even after the 2013 rating has been superseded.

**CONCLUSION**

For the foregoing reasons we conclude that the district court lacked subject matter jurisdiction over A.I.'s claims against the Commission. We reverse the portions of the district court's order that deny the Commission's plea to the jurisdiction, affirm the portions of the order that grant the plea, and dismiss A.I.'s suit for lack of subject matter jurisdiction.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in Part, Reversed in Part, and Dismissed

Filed:   June 2, 2016