# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00205-CV

---

**Reynaldo "Rey" Gonzalez, Jr., M.D., J.D., Appellant**

**v.**

**Texas Medical Board, Appellee**

---

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003901, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Appellee Texas Medical Board (TMB) issued a cease-and-desist order against appellant Reynaldo "Rey" Gonzalez, Jr., M.D., J.D, prohibiting him from, among other things, holding himself out to be a licensed physician in the State of Texas. Gonzalez subsequently filed suit against TMB in district court, challenging that order. TMB filed an amended plea to the jurisdiction, arguing that Gonzalez's suit was untimely. The district court granted the plea and dismissed Gonzalez's suit. In four overlapping issues on appeal, Gonzalez asserts that the district court erred by granting the plea to the jurisdiction, by sustaining TMB's hearsay objection to the admissibility of statements made by Gonzalez's counsel during the administrative hearing, by dismissing his claims for declaratory and injunctive relief, and by dismissing his administrative appeal of the cease-and-desist order. We affirm in part and reverse and remand in part the district court's order.

# BACKGROUND

Gonzalez has a medical degree from Ross University School of Medicine and a law degree from Dayton University School of Law. He is licensed to practice law in Texas but not medicine. In the 2020 election cycle, Gonzalez ran unsuccessfully for Texas District 34 of the U.S. House of Representatives. During his campaign, Gonzalez referred to himself as a physician and a doctor, including by making the following statements:

> As a physician, I recognize the importance of emphasizing lifestyle modifications which, if adopted, lead to healthy states, largely obviating the need for medical intervention. . . .

> For those who want to relate to the candidate, I am a physician. Like most doctors, I care about people. I listen. I act decisively in the best interest of my patients.

> By God's grace I am a physician and an attorney. I adopted a motto years ago which appears on my office's logo. It says in Latin, "Vocatus ad Sanandum," which means, "Called to Heal." My calling to serve in medicine was to heal the sick. My calling to serve in law is to heal my fellow man who is wronged by a third party. My most recent calling, to serve in the United States House of Representatives, is to contribute to the healing and a return to civility to our nation.

According to the allegations in Gonzalez's first amended petition, TMB received an anonymous complaint during the campaign that Gonzalez was holding himself out as a physician and had referred to himself as "Dr. Gonzalez." In September 2020, Gonzalez received correspondence from TMB stating that it had opened a formal investigation to determine if he had violated the Medical Practice Act and the Healing Art Identification Act by engaging in the unlicensed practice of medicine. Gonzalez responded in writing, stating that he does not practice medicine because he never applied for a Texas medical license after receiving his medical

2

degree, that he would not refer to himself as a physician moving forward, but that he was entitled to call himself a doctor because he had M.D. and J.D. degrees.

TMB convened a cease-and-desist hearing, after which the Board concluded that Gonzalez had violated both the Medical Practice Act and the Healing Art Identification Act and made the following findings of fact and conclusions of law:

FINDINGS OF FACT

The Board finds that:

1.     Respondent is not licensed to practice medicine in any jurisdiction.

2.     On March 31, 2008, Respondent graduated from Ross University with a Doctor of Medicine degree.

3.     On May 8, 2010, Respondent graduated from University of Dayton School of Law with a Juris Doctor degree.

4.     On May 6, 2011, the State Bar of Texas licensed Respondent to practice law.

5.     Respondent is a political candidate, most recently running for the United States House of Representatives, Texas District 34.

6.     Respondent referred to himself in his campaign videos, social media, and advertising as a "physician" and "medical doctor" and as a "Dr."

7.     Respondent also represented that he was a physician in interviews during the campaign, including stating that "[A]s a physician, I recognize the importance of emphasizing lifestyle modifications which, if adopted, lead to healthy states..."

3

8.     On October 1, 2020, Respondent represented to the Board that he would no longer refer to himself as a "physician" and would "attempt to correct anyone who does so in the future."

9.     However, Respondent did not remove the content described above from his website and social media.

10.    Respondent continues to use the title Dr. Rey Gonzalez online and on his social media without designating the authority under which the title was issued or the college or honorary degree that gives rise to the use of the title "Dr." or "physician."

11.    By holding himself out as a physician without designating the authority giving rise to the title(s), Respondent violated the Healing Arts Identification Act and the Medical Practice Act.

CONCLUSIONS OF LAW

1.     Section 104.003 of the Healing Art Identification Act requires licensed healing arts practitioners to designate the healing art the person is licensed to practice.

2.     Section 104.004 of the Healing Art Identification Act provides that a person using the title "doctor" must designate the authority under which the title issued or the college or honorary degree that gives rise to the use of the title.

3.     Section 165.052(a) of the Act authorizes the Board, after notice and opportunity for a hearing, to issue a Cease and Desist Order prohibiting an unlicensed person from engaging in activity that violates the Act, a rule adopted under the Act, or another state statute or rule relating to the practice of medicine.

4.     Section 165.052(b) of the Act provides that a violation of an Order under Section 165.052(a) constitutes grounds for imposing an administrative penalty under Tex. Occ. Code, Title 3, Subtitle B, Chapter 165, Subchapter A, which allows for an administrative penalty of up to $5000 for each Violation to be assessed, and each day [] a violation continues constitutes a separate violation.

4

5.     Section 165.156 of the Act prohibits a person from using any letters, words, or terms affixed on stationery or on advertisements, or in any other manner, to indicate that the person is entitled to practice medicine if the person is not licensed to do so.

6.     Chapter 187, Subchapter I of the Board Rules sets forth the Board's Procedural Rules for the handling of complaints and proceedings regarding the unlicensed practice of medicine.

7.     Respondent's conduct, as described above, shows that Respondent violated the Act under the legal authority listed above.

Based on these findings and conclusions, the Board issued a cease-and-desist order prohibiting Gonzalez from "acting as, or holding himself out to be, a licensed physician in the State of Texas" and from "referring to himself as a doctor or physician in any manner, including by referring to himself as 'doctor,' or 'Dr.,' unless he also designates the authority under which the title is used or the college or honorary degree that gives rise to the use of the title."   The order further specified that "[a]ny violation of this Order constitutes grounds for imposing an administrative penalty of up to $5,000 for each violation, and/or each day of a continuing violation, of the Medical Practice Act."

The order was dated February 26, 2021.  On March 23, 2021, Gonzalez filed with the Board a motion for rehearing that was overruled by operation of law on April 22, 2021.  On August 11, 2021, Gonzalez filed in district court a petition for judicial review.

In his petition, which Gonzalez characterized as "an administrative appeal," he stated that he was seeking "judicial review of a TMB Cease and Desist Order, Declaratory Relief, and an Application for a Temporary Injunction."  More specifically, he alleged that "[t]he agency's decision is not supported by substantial evidence"; "[t]he hearing panel exceeded its authority by issuing the Cease and Desist Order"; neither the Medical Practice Act nor the

5

Healing Art Identification Act apply to him because he is not licensed to practice medicine and thus the Texas Medical Board lacked jurisdiction to sanction him; Gonzalez was permitted to refer to himself as a doctor based on his medical and law degrees; and there was no evidence that he knowingly violated the Medical Practice Act. Gonzalez also raised constitutional claims that "[t]he cease-and-desist order is a prior restraint on free speech and seeks to regulate future speech in contravention" of the First Amendment to the United States Constitution and Article 1, Section 8 of the Texas Constitution; the order "is also an improper attempt to curtail future political speech and is a form of impermissible government censorship"; and Section 104.004 of the Healing Art Identification Act, the provision that requires persons using the title of doctor to designate the authority under which the title has been issued, is both unconstitutional as applied to Gonzalez and "facially invalid because it will chill the political speech of other persons who have medical or doctoral degrees from truthfully referring to their education or training." Based on these claims, Gonzalez asked the district court to vacate the order and issue declaratory judgments that "the agency exceeded its statutory authority by seeking to regulate non-licensees who are not engaged in the unlawful practice of medicine," that "a person must be found to be practicing medicine [as defined in Section 151.002(a)(13) of the Texas Occupations Code] before his or her use of the word 'physician' can be considered as violating" the Medical Practice Act, and that "TMB's authority is limited to those professionals whom it licenses and only has authority over non-licensees to the extent the non-licensees engage in conduct proscribed by the Medical Practice Act." Gonzalez also sought a temporary injunction prohibiting TMB from enforcing the order pending a hearing on the merits of his claims.

TMB responded in opposition to Gonzalez's request for injunctive relief and filed an amended plea to the jurisdiction, arguing that Gonzalez's suit was untimely because it was

filed more than 30 days after the cease-and-desist order became final, violating the deadline for judicial review of agency orders under the Administrative Procedure Act (APA). *See* Tex. Gov't Code § 2001.176(a) ("A person initiates judicial review in a contested case by filing a petition not later than the 30th day after the date the decision or order that is the subject of complaint is final and appealable."). The Board further argued that Gonzalez's claims for declaratory and injunctive relief were redundant of his administrative appeal of the cease-and-desist order and thus failed to separately invoke the district court's jurisdiction under the Uniform Declaratory Judgment Act (UDJA). Following a hearing, the district court granted the amended plea to the jurisdiction, dismissed Gonzalez's suit for lack of subject-matter jurisdiction, and denied Gonzalez's request for temporary injunctive relief as moot. Gonzalez filed a motion for new trial and motion to modify the judgment, which were overruled by operation of law. This appeal followed.

## DISCUSSION

### Plea to the jurisdiction

In Gonzalez's first, third, and fourth issues, he makes various arguments as to why the district court erred in granting the plea to the jurisdiction and dismissing his suit. Specifically, he contends that the 30-day deadline in the APA does not apply in this case, that the agency regulation that applies to cease-and-desist orders independently authorizes judicial review and has no deadline, and that, even if his administrative appeal of the order is untimely, that does not bar his constitutional challenges for declaratory / injunctive relief, which he argues are not redundant of the issues raised in his administrative appeal.

*Standard of review*

A plea to the jurisdiction is a dilatory plea challenging a trial court's authority to decide a case and seeking dismissal of a case for lack of subject-matter jurisdiction. *See Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.). "In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Id.* at 225-26. The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction, *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012), which encompasses the burden of establishing a waiver of sovereign immunity in suits against the government, *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019).

A party challenging subject-matter jurisdiction may challenge the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). When the challenge is to the pleadings, we must determine whether the plaintiff has alleged facts affirmatively demonstrating subject-matter jurisdiction. *Id*. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain sufficient facts to affirmatively demonstrate jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Id*. at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, the trial

8

court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id*. at 227.

By contrast, if the trial court granted the plea based on a challenge to the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues. *Id*. If the plea involved evidence implicating the merits of the case, we review the evidence to decide whether a fact issue exists. *See id*. If there is a fact question about jurisdiction, we cannot grant the plea, and the fact question will be resolved by the factfinder. *See id*. at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on jurisdiction, we rule on the plea as a matter of law. *See id*. at 228. To conduct this review, we assume that all evidence supporting the plaintiff's allegations is true, and we resolve all doubts and make all reasonable inferences in the plaintiff's favor. *Texas Tech Univ. Health Scis. Ctr.-El Paso v. Flores*, 612 S.W.3d 299, 305 (Tex. 2020).

"Our ultimate inquiry is whether the particular facts presented, as determined by the foregoing review of the pleadings and any evidence, affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction." *Bacon*, 411 S.W.3d at 171 (citing *Miranda*, 133 S.W.3d at 226; *Creedmoor–Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 516 & n.8 (Tex. App.—Austin 2010, no pet.)). "That is a question of law that we review de novo." *Id*. (citing *Miranda*, 133 S.W.3d at 226).

Moreover, because Gonzalez challenges the district court's application of statutory provisions and administrative rules, this case involves matters of statutory construction, which we also review de novo. *See Aleman v. Texas Med. Bd.*, 573 S.W.3d 796, 802 (Tex. 2019); *Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007); *Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 614 (Tex. App.—Austin 2014, pet. denied).

9

When we construe statutes or administrative rules, our primary objective is to ascertain and give effect to the drafters' intent. *Texas Tel. Ass'n v. Public Util. Comm'n of Tex.*, 653 S.W.3d 227, 266 (Tex. App.—Austin 2022, no pet.) (citing *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)). To discern that intent, we begin with the plain and ordinary meaning of the statute's or rule's words, using any definitions provided by the enacting body. *Id*. (citing *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016)). We further construe statutes and rules as a whole rather than isolated provisions. *Id*. We presume the Legislature intended a fair and reasonable result. *Id*. (citing Tex. Gov't Code § 311.021(3)). We presume the enacting body purposefully included each word, and that words not included were purposefully omitted. *Id*. We construe the statute or rule to avoid rendering any word or provision meaningless. *Id*. When clear, the text is determinative of the enacting body's intent unless the plain meaning produces an absurd result. *Id*.

### Regulatory framework

The Medical Practice Act governs the practice of medicine in Texas. *See* Tex. Occ. Code tit. 3, subtit. B, chs. 151-171. The administrative agency charged with enforcing the Medical Practice Act is TMB, which "is an agency of the executive branch of state government with the power to regulate the practice of medicine." *Id*. § 152.001(a); *see Aleman*, 573 S.W.3d at 802; *see also Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, 375 S.W.3d 464, 466 (Tex. App.—Austin 2012, pet. denied) (explaining that TMB has "broad authority" to regulate "practice of medicine" in Texas). "Practicing medicine" is defined as "the diagnosis, treatment, or offer to treat a mental or physical disease or disorder or a physical deformity or injury by any system or method, or the attempt to effect cures of those conditions, by a person who:

10

(A) publicly professes to be a physician or surgeon; or (B) directly or indirectly charges money or other compensation for those services." Tex. Occ. Code § 151.002(a)(13). "Physician" means a person licensed to practice medicine in this state. *Id.* § 151.002(a)(12).

Although TMB primarily regulates physicians, its regulatory authority expressly extends to persons who are not licensed to practice medicine. Specifically, Section 165.02 of the Medical Practice Act provides that "[i]f it appears to [TMB] that *a person who is not licensed under this subtitle* is violating this subtitle, a rule adopted under this subtitle, *or another state statute or rule relating to the practice of medicine*, the board after notice and opportunity for a hearing may issue a cease and desist order prohibiting the person from engaging in the activity." *Id.* § 165.052(a) (emphases added).

One of the ways an unlicensed person can violate the Medical Practice Act is "through the use of any letters, words, or terms affixed on stationery or on advertisements, or in any other manner," that "indicates that the person . . . is entitled to practice medicine if the person . . . is not licensed to do so." *Id.* § 165.156. Additionally, an unlicensed person can violate the Healing Art Identification Act, another state statute relating to the practice of medicine,[1] by "using the title 'doctor' as a trade or professional asset or on any manner of professional identification, including a sign, pamphlet, stationery, or letterhead, or as a part of a signature," without "designat[ing] the authority under which the title is used or the college or honorary degree that gives rise to the use of the title." *Id.* § 104.004. TMB found that Gonzalez,

---

[1] We conclude that this statute is "related" to the practice of medicine because the statute provides, "The healing art includes any system, treatment, operation, diagnosis, prescription, or practice to ascertain, cure, relieve, adjust, or correct a human disease, injury, or unhealthy or abnormal physical or mental condition." Tex. Occ. Code § 104.002. This definition implicates at least some aspects of the practice of medicine as defined in the Medical Practice Act.

11

by "holding himself out as a physician without designating the authority giving rise to the title(s)," had violated these provisions.

### *Applicability of the APA*

Although Gonzalez devotes much of his briefing to discussing the merits of his claims, our focus in this appeal is on whether Gonzalez is entitled to judicial review of those claims. "There is no right to judicial review of an administrative order unless a statute explicitly provides that right or the order violates a constitutional right." *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007). One such statute is Section 2001.171 of the Administrative Procedure Act, which provides that "[a] person who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case, is entitled to judicial review under this chapter." Tex. Gov't Code § 2001.171.

Section 2001.171 provides "a limited waiver of sovereign immunity," *Texas Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 198 (Tex. 2004), if certain statutory prerequisites to suit are satisfied. These prerequisites include a timely filed motion for rehearing, which "must be filed by a party not later than the 25th day after the date the decision or order that is the subject of the motion is signed," *see* Tex. Gov't Code §§ 2001.145(a), .146(a), and a timely filed petition for review, which must be filed "not later than the 30th day after the date the decision or order that is the subject of complaint is final and appealable," *id*. § 2001.176(a). A decision or order in a contested case is final on the date the latest filed motion for rehearing is overruled by operation of law, which is 55 days "after the date the decision or order that is the subject of the motion is signed." *Id*. §§ 2001.144(a)(2)(B),

12

.146(c). In suits filed against governmental entities, such as TMB here, these statutory prerequisites to suit are jurisdictional in nature. *See* Tex. Gov't Code § 311.034; *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012) ("[A] statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity."); *see also City of Madisonville v. Sims*, 620 S.W.3d 375, 380 (Tex. 2020) (concluding that because plaintiff failed to timely file suit against city under Whistleblower Act, "he failed to satisfy a jurisdictional statutory prerequisite to suit"); *Volino v. Texas Dep't of Motor Vehicles*, No. 03-22-00209-CV, 2023 WL 2617801, at *2 (Tex. App.—Austin Mar. 24, 2023, no pet.) (mem. op.) (concluding that because appellant's suit for judicial review was against governmental entity, "the statutory prerequisites set out in the APA, including the thirty-day deadline to file the petition for review, are jurisdictional and not merely mandatory"). *Cf. Texas Mut. Ins. Co. v. Chicas*, 593 S.W.3d 284, 291 (Tex. 2019) (concluding that in suit filed against non-governmental entity, deadline to seek judicial review of appeals-panel decision was not jurisdictional); *PHI Air Med., LLC v. Texas Mut. Ins. Co.*, 641 S.W.3d 542, 552 (Tex. App.—Austin 2022, no pet.) (reaching same conclusion regarding similar statute).

In this case, TMB issued its cease-and-desist order on February 26, 2021. Gonzalez timely filed his motion for rehearing on March 23, 2021. That motion was overruled by operation of law on April 22, 2021, which was also the date the order became final. Thus, Gonzalez could file his petition for review no later than May 24, 2021.[2] Gonzalez did not file his petition until August 11, 2021, well beyond the thirty-day deadline provided in the APA for

---

[2] The thirty-day deadline was May 22, 2021, but because that date fell on a Saturday, it was extended to the following Monday. *See* Tex. Gov't Code § 311.014(b).

judicial review of agency orders. Thus, if the APA applies, then the district court was without jurisdiction to review the cease-and-desist order.

We conclude that the APA applies here. This Court has held that "[u]nless otherwise provided, the APA's contested-case and judicial-review procedures apply to agency-governed proceedings." *Marble Falls Indep. Sch. Dist. v. Scott*, 275 S.W.3d 558, 563 (Tex. App.—Austin 2008, pet. denied). Multiple statutes expressly provide that the APA does not apply to certain agency proceedings. *See, e.g.*, Tex. Gov't Code § 411.180(a) ("A hearing under this section [relating to handgun licensing] is not subject to Chapter 2001 (Administrative Procedure Act)."); Tex. Lab. Code §§ 61.058(a), (b) ("A hearing conducted under this subchapter [relating to wage claims] . . . . is not subject to Chapter 2001, Government Code."); Tex. Occ. Code § 2023.106(d) ("A hearing conducted by a steward or judge under this section [relating to racing] is not subject to Chapter 2001, Government Code."). Neither the Medical Practice Act nor the Healing Art Identification Act contain any such provision indicating that the APA does not apply to cease-and-desist proceedings under the Medical Practice Act. In fact, Section 165.002 of the Medical Practice Act, which governs the imposition of administrative penalties, including those that may be imposed for violations of a cease-and-desist order, *see* Tex. Occ. Code § 165.052(b), expressly provides that a proceeding related to such penalties "is subject to Chapter 2001, Government Code." *Id*. § 165.002(b).

Absent an express statutory provision indicating that the APA is inapplicable to cease-and-desist proceedings under the Medical Practice Act, we have no basis for concluding that the APA does not apply in this case. *See* Tex. Gov't Code § 2001.001 (providing that "[i]t is the public policy of the state through [the APA] to provide minimum standards of uniform practice and procedure for state agencies . . . and restate the law of judicial review of state

14

agency action"); *Mosley v. Texas Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 258 (Tex. 2019) ("[Section 2001.001] is a plain statement of the APA's general applicability to all state agencies and the processes for judicial review of their decisions. The APA's provisions to that effect, which are myriad and voluminous, would be wasted ink if they did not generally apply to all state agencies."); *see also Heat Energy Advanced Tech., Inc. v. West Dallas Coal. for Envtl. Justice*, 962 S.W.2d 288, 291 n.1 (Tex. App.—Austin 1998, pet. denied) (explaining that for APA to apply, "it matters not that the [agency's] enabling statute does not expressly incorporate the APA"; what matters is that "the enabling statute does not contradict the APA").

Nevertheless, Gonzalez insists that the APA does not apply here because, in his view, the cease-and-desist order was not "a final decision in a contested case." He asserts that the cease-and-desist hearing was not a "contested case" because it was not held before the State Office of Administrative Hearings (SOAH) and that the cease-and-desist order was not a "final decision" by TMB because the order did not assess an administrative penalty against him. We disagree with both contentions.

First, the APA broadly defines a "contested case" as "a proceeding . . . in which the legal rights, duties, or privileges of a party are to be determined by a state agency after an opportunity for adjudicative hearing." Tex. Gov't Code § 2001.003(1). This Court has held that "the key phrase in the definition is 'adjudicative hearing'" and that "the legislature intended for the term to mean 'a hearing at which the decision-making agency hears evidence and, based on that evidence and acting in a judicial or quasi-judicial capacity, determines the rights, duties, or privileges of parties before it.'" *Ramirez v. Texas State Bd. of Med. Exam'rs*, 927 S.W.2d 770, 772 (Tex. App.—Austin 1996, pet. denied) (quoting *Best & Co. v. Texas State Bd. of Plumbing Exam'rs*, 927 S.W.2d 306, 309 n.1 (Tex. App.—Austin 1996, writ denied). Absent an express

15

statutory provision stating otherwise, there is no requirement that the adjudicative hearing be held before SOAH. *See Brooks v. Texas Med. Bd.*, No. 03-14-00239-CV, 2015 WL 3827327, at *6 (Tex. App.—Austin June 18, 2015, no pet.) (mem. op.) (concluding that if "the Texas Legislature intended for SOAH to conduct cease-and-desist hearings for the unlicensed practice of medicine, it could have plainly articulated that requirement—just as it did in the preceding section of the statute on disciplinary actions against medical license-holders"); *cf.* Tex. Occ. Code § 164.007(a) (providing that for disciplinary actions against license-holders, "[a] formal hearing shall be conducted by an administrative law judge employed by the State Office of Administrative Hearings").

At the cease-and-desist hearing in this case, in accordance with agency regulations related to cease-and-desist hearings, *see* 22 Tex. Admin. Code § 187.83(e), Gonzalez appeared personally via videoconference with counsel, agency staff was present, TMB was represented by two Board members who comprised a panel of the Board, and the panel heard evidence presented by the parties. Based on this evidence, and acting in a judicial or quasi-judicial capacity, the panel made findings of fact and conclusions of law, including that Gonzalez had violated the Medical Practice Act and the Healing Art Identification Act. The panel also determined Gonzalez's legal rights, duties, or privileges under those statutes, including that he was prohibited from acting as, or holding himself out to be, a licensed physician in the State of Texas and that he was prohibited from referring to himself as a doctor or physician in any manner, "unless he also designate[d] the authority under which the title is used or the college or honorary degree that gives rise to the use of the title." We conclude that this hearing was a contested case for purposes of the APA.

16

Regarding the finality of the order, "[a]lthough there is no single rule dispositive of all questions of finality, courts should consider the statutory and constitutional context in which the agency operates, and should treat as final a decision 'which is definitive, promulgated in a formal manner and one with which the agency expects compliance.'" *Texas-New Mexico Power Co. v. Texas Indus. Energy Consumers*, 806 S.W.2d 230, 232 (Tex. 1991) (quoting 5 J. Stein, G. Mitchell & B. Mezines, Administrative Law 48–10 (1988)). "Administrative orders are generally final and appealable if 'they impose an obligation, deny a right or fix some legal relationship as a consummation of the administrative process.'" *Id.* (quoting *Sierra Club v. United States Nuclear Regul. Comm'n*, 862 F.2d 222, 224 (9th Cir. 1988)). The cease-and-desist order in this case did exactly that—it denied Gonzalez the right to refer to himself as a doctor or physician in any manner, "unless he also designate[d] the authority under which the title is used or the college or honorary degree that gives rise to the use of the title." Additionally, the order was promulgated in a formal manner in that the agency's decision was reduced to writing, was designated as a public record, included findings of fact and conclusions of law, and was signed by TMB's executive director, as required by the APA. *See* Tex. Gov't Code § 2001.141. Contrary to Gonzalez's assertion, the lack of an administrative penalty in the order does not mean that the order lacked finality. Even though TMB did not assess an administrative penalty against Gonzalez at that time, the agency clearly expected compliance with its order, which subjected Gonzalez to financial penalties for any violations of the order, specifically "an administrative penalty of up to $5,000 for each violation, and/or each day of a continuing violation, of the Medical Practice Act." We conclude that the cease-and-desist order was "a final decision in a contested case" for purposes of the APA.

17

Gonzalez further asserts that an agency rule relating to cease-and-desist hearings, Section 187.83(f) of the Texas Administrative Code, provides "an independent basis to seek judicial review" of the order. That rule provides that "[i]f after the issuance of a cease and desist order the individual wishes to appeal the entry of the order, the individual may file a petition at the Travis County District Court." 22 Tex. Admin. Code § 187.83(f) (2013) (Tex. Md. Bd., Proceedings for Cease and Desist Orders). Gonzalez reasons that because this provision is silent on when the petition may be filed, there was no deadline to file his petition. However, the absence of a deadline in an agency rule for filing suit does not mean that there is no statutory deadline. As we have already explained, the thirty-day filing deadline is a statutory prerequisite to suit imposed by the APA, which we have concluded applies here, and an administrative agency cannot dispense with that legislatively imposed jurisdictional mandate. *See, e.g.*, *Mosley v. Texas Health & Hum. Servs. Comm'n*, 517 S.W.3d 346, 353 (Tex. App.—Austin 2017) (explaining that agency may not waive jurisdictional prerequisites to suit such as motion for rehearing and rejecting contention that motion for rehearing was not required because agency rule "did not specifically provide for such motions"), *aff'd in part, rev'd in part on other grounds by* 593 S.W.3d 250 (Tex. 2019); *Bacon*, 411 S.W.3d at 173 (emphasizing that Legislature is "gatekeeper" controlling when and how sovereign immunity is waived); *Texas Alcoholic Beverage Comm'n v. Sfair*, 786 S.W.2d 26, 27 (Tex. App.—San Antonio 1990, writ denied) ("An appeal from an administrative agency is not a matter of right, it is set out by statute and must be strictly complied with in order to vest the district court with jurisdiction.").

Additionally, Gonzalez argues that Section 104.005(a) of the Healing Art Identification Act, which provides that "the district or county attorney shall file and prosecute appropriate judicial proceedings" against a person who violates Section 104.003 of that act, *see*

Tex. Occ. Code § 104.005(a), "establishes a legislative intent for judicial enforcement, not administrative action by TMB." We disagree. There is no indication in either the Medical Practice Act or the Healing Art Identification Act that the legislature intended judicial proceedings and administrative proceedings to be mutually exclusive or for one proceeding to preclude the other. Rather, the legislature authorized TMB to bring an administrative proceeding against a person who violates the statute, *see id*. § 165.052(a) (providing for issuance of cease-and-desist order for violating statute), and authorized a district or county attorney to file and prosecute a judicial proceeding against a person who violates the statute, *see id*. § 104.007 (providing criminal penalties for violating statute).

For these reasons, we conclude that the APA applies to Gonzalez's appeal of the cease-and-desist order and that he was therefore required to file his petition for review "not later than the 30th day after the date the decision or order that is the subject of complaint is final and appealable." *See* Tex. Gov't Code § 2001.176(a). Because he failed to comply with this jurisdictional requirement, the district court did not err in dismissing for want of jurisdiction Gonzalez's claims challenging the cease-and-desist order, including his constitutional challenges to the order itself. *See Texas Comm'n on Envtl. Quality v. Kelsoe*, 286 S.W.3d 91, 97 (Tex. App.—Austin 2009, pet. denied) (concluding that party raising constitutional challenge to agency decision must nonetheless comply with statutory prerequisites for judicial review of that claim); *see also* Tex. Gov't Code § 2001.174(2)(A) (providing that judicial review of agency decisions under APA includes review of whether decision violates any constitutional provision).

19

*Redundant remedies*

Gonzalez argues in the alternative that the untimeliness of his administrative appeal does not bar his claims for declaratory / injunctive relief, which he argues are not redundant of the issues raised in his administrative appeal. "Although it is true that the APA allows for suits against the government to challenge particular agency actions, it does not necessarily follow that all claims that have any potential effect on an agency's authority must be brought through the APA." *Texas Mun. Power Agency v. Public Util. Comm'n*, 100 S.W.3d 510, 515 (Tex. App.—Austin 2003, pet. denied) (internal citations omitted). "The UDJA grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration of those rights under the statute." *Id*. (citing Tex. Civ. Prac. & Rem. Code § 37.004). "Thus, when a party brings a declaratory judgment action to interpret an agency's statutory authority, immunity from suit is waived by the UDJA." *Id*. at 516.

The UDJA does not, however, enlarge a trial court's jurisdiction, but is "merely a procedural device for deciding cases already within a court's jurisdiction." *Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621-22 (Tex. 2011) (per curiam) (quoting *Texas Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011)). A litigant's "couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Sawyer Trust*, 354 S.W.3d at 388; *see McLane Co. v. Texas Alcoholic Beverage Comm'n*, 514 S.W.3d 871, 876 (Tex. App.—Austin 2017, pet. denied). Moreover, "[u]nder the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels." *Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 79 (Tex. 2015). "The focus of the doctrine is on the initiation of the case, that is, whether the Legislature created a statutory waiver of sovereign immunity that

20

permits the parties to raise their claims through some avenue other than the UDJA." *Id*. The avenue applicable here is Section 2001.174 of the APA, which allows "state courts to reverse or remand existing agency orders, but not enjoin future ones." *Id*. (citing Tex. Gov't Code § 2001.174). Thus, the test for redundancy under the APA is whether "the declaration sought goes beyond reversal of an agency order." *Id*. For example, in *Patel*, plaintiffs sought "prospective injunctive relief against future agency orders based on the statutes and regulations" challenged in that case. *Id*. The Texas Supreme Court concluded that this was not redundant of the remedies provided by the APA, which were "limited to reversal of the particular orders at issue." *Id*.

In this case, most of Gonzalez's claims challenge only the cease-and-desist order. He asserted that the order is not reasonably supported by substantial evidence or any evidence, that the order is an unconstitutional prior restraint on his free speech and that Section 104.004 of the Healing Art Identification Act was unconstitutionally applied to him, that the hearing panel and TMB exceeded their authority by issuing the order, that the issuance of the order is an "unreasonable interpretation of TMB's empowering statute," that the order precludes Gonzalez "from presenting himself in the workplace in a truthful manner," and that the findings set forth in the order are against the great weight and preponderance of the evidence. These claims all could have been brought under the APA in a timely filed petition for judicial review of the cease-and-desist order and are thus redundant.

As for the relief requested, Gonzalez asked that the cease-and-desist order be set aside; sought declarations that (1) "the agency exceeded its statutory authority by seeking to regulate non-licensees who are not engaged in the unlawful practice of medicine" and (2) the proper construction of the occupations code is that a person must be found to be practicing

medicine before his use of the word "physician" could violate the statute; sought judgment limiting TMB's regulatory authority to professionals whom it licenses and non-licensees to the extent they engage in conduct proscribed by the Medical Practice Act; and sought a temporary injunction "enjoin[ing] the Texas Medical Board from enforcing its Cease and Desist Order pending a final hearing on the merits." This relief is identical to and thus redundant of the relief Gonzalez could have pursued in his APA action had it been timely filed.

However, Gonzalez pleaded one claim that is not redundant of the claims he could have brought under the APA. Specifically, he raised a facial constitutional challenge to Section 104.004 of the Texas Occupations Code, the provision of the Healing Art Identification Act that requires non-licensed persons who use the title "doctor" to "designate the authority under which the title is used or the college or honorary degree that gives rise to the use of the title." Tex. Occ. Code § 104.004. Gonzalez asserted in his amended petition that "section 104.004 is facially invalid because it will chill the political speech of other persons who have medical or doctoral degrees from truthfully referring to their education and training." A declaration that Section 104.004 is unconstitutional on its face would "go beyond reversal" of the cease-and-desist order and thus is not redundant of Gonzalez's remedies under the APA. *See Patel*, 469 S.W.3d at 79. Accordingly, that claim survives TMB's plea to the jurisdiction and should not have been dismissed.[3] *See id.*; *see also Texas Dep't of Ins. v. Texas Ass'n of Health*

---

[3] TMB asserts that Gonzalez "failed to plead or preserve a facial challenge to section 104.004." We disagree. TMB contends that Gonzalez did not plead this challenge because he did not explicitly request a "declaration" of that statute's invalidity. However, in a plea to the jurisdiction, we are to construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In the "claims for relief" section of his amended petition, Gonzalez expressly argued that Section 104.004 was "facially invalid" because it would chill "political speech." We conclude that this

*Plans*, 598 S.W.3d 417, 425 (Tex. App.—Austin 2020, no pet.); *Texas Mun. Power Agency*, 100 S.W.3d at 519-20; *Ben Robinson Co. v. Texas Workers' Comp. Comm'n*, 934 S.W.2d 149, 153 (Tex. App.—Austin 1996, writ denied).

We sustain in part Gonzalez's first, third, and fourth issues challenging the district court's grant of TMB's plea to the jurisdiction to the extent they challenge the district court's dismissal of Gonzalez's facial constitutional challenge to Section 104.004 of the Healing Art Identification Act. We otherwise overrule Gonzalez's first, third, and fourth issues.

**Hearsay**

In Gonzalez's second issue, he asserts that the district court abused its discretion by sustaining TMB's hearsay objection to the admissibility of statements made by TMB's counsel during the administrative hearing tending to show that TMB was regulating Gonzalez's political speech. Gonzalez's argument on this point, in its entirety, is limited to the following two sentences contained within a footnote in his statement of facts: "The trial court sustained TMB's objection that its counsel's argument was hearsay. The ruling was error because it was not hearsay. Tex. R. Evid. 801([e])(2)(D) (statement by party's agent made in scope of

_____

was sufficient to put the district court on notice that he was seeking declaratory relief regarding the statute's constitutional validity.

TMB further argues that Gonzalez did not preserve this claim because he failed to raise it in his motion for rehearing before the agency. However, this preservation requirement applies specifically to administrative proceedings under the APA. *See Entergy Gulf States, Inc. v. Public Util. Comm'n of Tex.*, 173 S.W.3d 199, 210 (Tex. App.—Austin 2005, pet. denied). In such proceedings, "[t]he motion for rehearing must be sufficiently definite to allow the agency to cure the error or defend the order." *Id.* This requirement, which implicates the exhaustion of administrative remedies under the APA, does not apply to pure questions of law brought under the UDJA, such as facial challenges to the constitutionality of a statute. *See City of Richardson v. Bowman*, 555 S.W.3d 670, 686 (Tex. App.—Dallas 2018, pet. denied); *Texas Dept. of Public Safety v. Alexander*, 300 S.W.3d 62, 79 (Tex. App.—Austin 2009, pet. denied).

relationship)." We find this contention to be inadequately briefed and therefore waived. *See* Tex. R. App. P. 38.1; *Martinez Jardon v. Pfister*, 593 S.W.3d 810, 832 (Tex. App.—El Paso 2019, no pet.); *see also ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010). Additionally, even if the issue were not waived, we could not conclude on this record that any error in excluding opposing counsel's statements at the cease-and-desist hearing harmed Gonzalez. Those statements went to the merits of Gonzalez's claim that TMB was regulating his political speech and were not dispositive of the jurisdictional inquiry that was before the court.

We overrule Gonzalez's second issue.

## CONCLUSION

We affirm in part the district court's order granting TMB's plea to the jurisdiction to the extent it dismissed Gonzalez's claims relating to the cease-and-desist order that could have been brought under the APA but were untimely. We reverse in part the district court's order granting TMB's plea to the jurisdiction to the extent it dismissed Gonzalez's facial constitutional challenge to Section 104.004 of the Healing Art Identification Act and remand that claim to the district court for further proceedings consistent with this opinion.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed in Part, Reversed and Remanded in Part

Filed: October 31, 2023

24